282 So.2d 711 (1973)
STATE of Louisiana
v.
Billy G. AUSTIN.
No. 53125.
Supreme Court of Louisiana.
May 7, 1973.
Rehearings Denied June 11 and September 24, 1973.
Drew, White, Drew & Drew, R. Harmon Drew, Minden, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Special Asst. Atty. Gen., Leon Whitten, Dist. Atty., for plaintiff-appellee.
*712 DIXON, Justice.
A five man jury convicted defendant Austin of the crime of negligent homicide, R.S. 14:32. Austin was sentenced to serve four years imprisonment at hard labor.
During his trial, defendant reserved six bills of exceptions, all of which are presented to this court on appeal.
BILLS OF EXCEPTIONS NUMBERS ONE AND THREE
These bills were reserved when Mr. Ray Heard of the Shreveport crime lab was qualified to testify as an expert in "accident reconstruction." [1]
The negligent homicide charge against defendant arose out of an automobile accident on September 3, 1971, involving a pickup truck being driven by defendant and an automobile. One of the three occupants of the automobile, an eight year old girl, was killed in the head-on collision. At' trial, the State contended that the accident occurred because defendant's pickup was being driven in the wrong lane of the highway. Apparently, Mr. Heard's testimony was elicited to "reconstruct" the point of collision.
Defendant objected to Mr. Heard basing his analysis of the accident on information supplied to him by others. When the court overruled this objection, defendant reserved Bills of Exceptions Numbers One and Three.
The record does not contain Mr. Heard's testimony. Thus, it is impossible to determine if or to what extent Mr. Heard based his testimony on information furnished him by others. The record does not show that the defendant objected to Heard's qualifications as an expert, but that Heard could not "vouch for the accuracy of the information" furnished him in the accident investigation.
It is no bar to an expert's testimony that he obtained information from other persons. Expert opinion might even be based on hypothetical situations. Such testimony (of an expert based on information obtained from others) is not subject to objection as hearsay because it is not offered to prove the truth of the "hearsay" information, it is offered to prove the source of the information. Bills of Exceptions Numbers One and Three are without merit.
BILLS OF EXCEPTIONS NUMBERS TWO, FOUR, FIVE AND SIX
At the trial, the State introduced evidence of a blood test which indicated that defendant's blood contained a high percentage of alcohol immediately following the fatal accident. The blood sample for the test was taken from defendant at a hospital shortly after the accident while defendant was, at most, semi-conscious.
Defendant objected to the admissibility of the evidence on the ground that he did not consent to the removal of his blood as required by R.S. 32:661(C) (1972). The trial judge overruled the objection, finding that consent had been given by defendant. Defendant reserved Bill of Exceptions Number Two to the court's ruling.

*713 R.S. 32:661(B) provides:
"Any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by Subsection (A) of this section, and the test or tests may be administered subject to the provisions of R.S. 32:662."
Defendant was, at most, semi-conscious when the blood sample was taken from him. Hence, he was "in a condition rendering him incapable of refusal" within the meaning of R.S. 32:661(B). Therefore, it is presumed, under R.S. 32:661 (A), that defendant consented to the blood test. Section C of R.S. 32:661,[2] whether or not it be applicable to defendant's prosecution, does not affect the admissibility of the blood test evidence. Defendant makes no contention that the manner of extracting the blood from him denied him due process of law. Bill of Exceptions Number Two is without merit.
Bills of Exceptions Numbers Four, Five and Six were reserved when the trial court overruled defendant's objection to the introduction of evidence of the blood test on the ground that the State had not proven a sufficient chain of possession of the blood sample. The record does not support defendant's contention.
Defendant's conviction and sentence are affirmed.

ON REHEARING
PER CURIAM.
In his application for rehearing, the defendant correctly notes that the date of the accident was September 3, 1972, not September 3, 1971, as indicated in the opinion. Hence, Section C of R.S. 32:661 was applicable to the blood test evidence.
Defendant argues, in his application for rehearing, that the blood test results should have been excluded from evidence because the proper procedure for introducing the test results was not followed. The procedure for introducing the blood test evidence is contained in R.S. 32:661(C):
"When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first inform the person of the consequences of a refusal. In addition, the law enforcement officer shall have the person sign a standard form advising such person of his constitutional rights; the law enforcement officer shall have the person sign a separate form advising such person of the consequences of his refusal to submit to a chemical test, provided however that a single combination of the two forms may be used. If the person is unable or unwilling to sign the form, the law enforcement officer shall certify that such person was informed of his constitutional rights and was unable or unwilling to sign said form. If the above procedure is not complied with, the results of the test or any reference to it is inadmissible into evidence in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages."
The only issue raised by defendant either at trial or in the perfected bills of exceptions was whether he had given his consent to the extraction of the blood sample. However, consent or lack of consent is not determinative of the admissibility of the blood test results.
Defendant did not raise the following procedural issues: whether the blood sample *714 was taken at the instance of a law enforcement officer; whether, if defendant was conscious, defendant signed a form advising him of his constitutional rights and of the consequences of his refusal to submit to the tests; whether, if defendant was "unwilling or unable to sign the form," the law enforcement officer certified that defendant was informed of his constitutional rights, and was unwilling or unable to sign the form. The record does not indicate that the State failed to follow the proper procedure for introducing evidence of the blood test results.
The application for rehearing is denied; the right is reserved to the defendant to apply further for rehearing, in view of this per curiam.
NOTES
[1] This opinion is not to be interpreted as approbation of the use of "experts" to reconstruct an accident. Defendant neither challenges the court's acceptance of Heard as an "accident reconstruction" expert nor questions whether such "experts" exist. This court has not yet determined whether such an "expert" may testify concerning his opinion of the manner in which an accident occurred. Some jurisdictions, however, refuse to allow such "experts" to "reconstruct" accidents. See, e. g., Conway v. Hudspeth, 229 Ark. 735, 318 S.W.2d 137 (1958), Carmody v. Aho, 251 Minn. 19, 86 N.W.2d 692 (1957), Hagan Fence Co., v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963) and Housman v. Fiddyment, 421 S.W.2d 284 (Mo.En Banc 1967).
[2] At the time the blood sample was taken from defendant, there was no R.S. 32:661 (C). Section C was added to R.S. 32:661 by Act No. 534, § 2, of 1972, which became effective July 26, 1972. Defendant's trial commenced October 18, 1972.