543 So.2d 984 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Ty C. TRAHAN, Defendant-Appellant.
No. CR 88-682.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*987 Lewis O. Unglesby, Unglesby & Barrios, Baton Rouge, Stephen A. Stefanski, Edwards, Stefanski, Crowley, for defendant-appellant.
Glenn B. Foreman, Robert T. Cline, Asst. Dist. Attys., Crowley, for plaintiff-appellee.
Before FORET, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
Appellant, Ty C. Trahan, was found guilty of second degree murder, a violation of La.R.S. 14:30.1, and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. Appellant now seeks review of his sentence based on nineteen assignments of error. Assignment of error number eleven has not been briefed and is therefore deemed abandoned. *988 State v. Dewey, 408 So.2d 1255 (La.1982).
FACTS:
In the early morning hours of July 1, 1987, the victim, Andrea Trahan, and a friend of hers went to Raylee's Lounge in Crowley. There they encountered appellant, Ty Trahan, who arrived at about the same time. Andrea and Trahan had been dating for six weeks, but Andrea had resumed a relationship with an ex-fiancé some two weeks earlier and had plans to meet this man the next day in Lafayette. While in the lounge Trahan and Andrea got in an argument over Andrea's interest in other men. Later, while dancing with Andrea, Trahan appeared to hold her by the throat and she cried. The two then sat at a table for a long while, talking.
After Andrea left the lounge with her friend, she told her companion that she told Trahan, while they were discussing their relationship, that she wanted to end their romance and just "be his friend."
The two girlfriends arrived at Andrea's house at about 4:15 a.m. Andrea then went back to the lounge, telling her friend that she was going to get a cigarette case left by her friend, and also to see if Trahan's car, with which he had been having trouble, was all right.
At 5:00 a.m. that morning, the staff at the Acadia Parish jail saw Trahan knocking at the rear door of the facility. The door was opened and he hurriedly entered and requested aid for Andrea. He appeared intoxicated and was bleeding from his left leg. He informed deputies that his girlfriend was in the car and that "she blew her head off." Told that the incident occurred "in the back", deputies went to the parking lot and found the victim's automobile. Although the engine was not running, the vehicle's headlights were operating and the ignition switch was engaged. Inside the vehicle the officers discovered the victim's lifeless body. The upper torso was laying into the vehicle's passenger seat. The lower portion of the body was straddled across the console and into the driver's seat. The victim's legs were crossed, with the right leg near the clutch and brake pedals. The left leg was crossed over and on the passenger side. The officers discovered a semi-automatic 9 millimeter Mack 11 handgun on the passenger side floorboard. Also found was a bullet on the driver's seat, one spent cartridge on the floorboard near the weapon, a second beneath the victim's body. There was a .44 caliber handgun wedged between the console and the passenger seat.
An autopsy disclosed the victim died as a result of two gunshot wounds, one of which severed her spinal cord. The bullets had entered through the back of the neck and exited the body through the chin and front portion of the neck.
Trahan was admitted to a hospital with two bullet wounds to his left leg. These bullets entered the front portion of his leg and exited through the rear.
Atomic absorption tests were performed on the hands of the defendant and the victim. The results indicated the victim had not fired a weapon and that defendant had discharged a firearm.
At the hospital, Trahan, apparently realizing he was a suspect in the shooting and wanting to deny the implication, told an officer that had he shot the victim "no one would have ever found the body". He told the same officer that he did not know where the gunshot originated and did not know exactly what had happened.
At trial, the state relied essentially on expert testimony to establish that the defendant intentionally shot the victim. The state used photographs exhibiting the type and location of the wounds of both parties, and testimony concerning the trajectory of the bullets, the operation of the firearm seized, bone fragment patterns on defendant's jeans, and atomic absorption tests, to convince the jury of Trahan's guilt. These experts opined that the victim's head was placed against defendant's leg when the shooting occurred. On one of the shots, the firearm was pressed directly against the skin and on the second it was nearly in contact with the skin. This conclusion was reached because the victim's blood was found at a point just above the *989 entry holes on jeans worn by the defendant. Also, a bone fragment pattern around one of those jeans entry holes suggested that the same bullet which struck and broke victim's jaw went on into the defendant's leg at that entry point. The state experts gave the opinion that the same bullet which travelled through the victim's body passed through the defendant's leg.
In defense of the charges, the defendant argued that the victim died as a result of a tragic accident. According to Trahan, Andrea returned to the lounge at about 4:00 a.m. His car would not start and she offered him a ride in her car. As she was driving from the lounge, the defendant remembered that he had left his two firearms in his vehicle so the pair returned and got the weapons. The defendant testified that he placed the .44 between the seat and the console, and placed the 9 millimeter gun on his lap. They apologized to each other for their previous behavior. Then, assertedly having been drinking since 4:00 p.m. the previous afternoon, he reclined the passenger seat and tried to sleep. Andrea drove to Rayne where the two had breakfast. They got back in the car and the defendant took the weapon which was under the seat and placed it on his lap. He again fell asleep. Andrea was driving past the Crowley courthouse when the gun slipped to the floorboard. According to the defendant, the victim stopped her car and leaned forward to pick up the weapon. The defendant picked up the firearm with his right hand. Defendant's explanation was that in transferring the gun to his left hand and bringing it towards the back of the car in order to put it on the back seat, the gun accidentally discharged. After he realized Andrea had been shot, Trahan declared that he ran around the car to the driver's door and finding the door locked, returned to the passenger side. He stated that he was able to operate the vehicle the short distance to the parish jail by contorting Andrea's body in a manner which allowed access to the controls. According to his explanation, he pulled her legs over his, operated the clutch with his left leg straddled over the console, leaning the victim's head against his shoulder, steered with his left hand, and used his right hand to activate the accelerator.
The defendant had an expert testify in his defense that neither wound was a contact wound. The expert also contested the state's assertion of the trajectory of the bullets and the positioning of the parties in the vehicle. The expert concluded that the victim's head was positioned above and not against the defendant's leg and that the victim died as a result of an accidental shooting.
We will now take up the assignments of error. To promote clarity, the assignments of error will not be reviewed in numerical order but in a sequence which facilitates a more organized discussion of the issues raised.
ASSIGNMENT OF ERROR NO. 17:
Appellant argues that the trial judge erred in denying a defense request for random allotment of the case to a judge within the Fifteenth Judicial District. Appellant contends that the criminal defendant suffers an inherent injustice in the district because the prosecution may utilize the system to "forum shop" for a sympathetic trial judge. Furthermore, the activity assertedly creates an appearance of impropriety and allows the local prosecutor to control functions of the judicial branch.
Each judicial district court has the authority and is expressly empowered to adopt local procedural rules in civil as well as criminal cases. La.R.S. 13:472; La.C. Cr.P. art. 18. The only limitation on this general authority for establishing procedural guidelines is the existence of specific legislative procedural rules to the contrary. State v. Eros Cinema, 262 La. 706, 264 So.2d 615 (1972). La.C.Cr.P. art. 61 vests in the district attorney control over criminal prosecutions in his district by allowing the district attorney to determine who, when and how he shall prosecute. These powers of the district attorney are not in the hands of the judiciary so that there exists no violation of separation of powers. State v. Taylor, 495 So.2d 996 (La.App. 3 Cir.1986), writ denied, 499 So.2d 84 (1987). *990 The exercise of the right to control prosecution cannot be used to deny defendant's constitutional rights. State ex rel Eames v. Amiss, 288 So.2d 316 (La.1974).
The judges of the Fifteenth Judicial District have determined not to implement a rule providing for random allotment of criminal cases. Indeed, because the district consists of eleven judges who must rotate between three parishes, such a rule in this district would have the effect of limiting the district attorney's right to determine when a case is prosecuted. Appellant in the instant case does not establish nor does the record show that the current system of allotment operates to deny constitutional rights. If defendant felt the trial judge in the instant case was somehow biased to the extent of an inability to conduct a fair and impartial trial, the appropriate remedy would have been a motion to recuse the particular judge. La.C.Cr.P. art. 671.
There is no error in the trial court's ruling.
ASSIGNMENT OF ERROR NO. 16:
Appellant contends that the trial court erred in refusing to allow a defense expert to remove evidence from the state crime lab in order to perform independent scientific tests at the expert's lab. Appellant argues that the ruling interfered with the right to develop a defense or the ability to gain information for effective cross-examination of state experts.
On February 18, 1988, three weeks before trial, a hearing was held on a defense motion to remove evidence from the state police crime lab for inspection at a lab of choice by a defense expert. The prosecution gave access to defense counsel and defense experts to the evidence held at the crime lab. However, the defense expert testified that he possessed more advanced equipment and would prefer to investigate the state's evidence in more familiar surroundings. An expert from the state police lab testified the state's equipment was adequate but recognized a scientist's natural preference to use his own equipment. The trial judge ruled that a defendant does not possess an absolute right to remove evidence for inspection pursuant to La.C. Cr.P. art. 718. The court recognized the prosecutor's interest in preserving evidence and balanced it against the legitimate interest of the criminal defendant in developing a viable defense. The court found that the state facilities were adequate and denied defendant's motion. However, the court expressed a willingness to reconsider the order if, after a test at the state crime lab, defendant's expert could assert inadequacy of the state equipment.
La.C.Cr.P. art. 718 requires the district attorney "to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state" under enumerated circumstances. Where the state' allows access to discoverable evidence in its possession, the dictates of the article are satisfied. State v. Cargille, 507 So.2d 1254 (La.App. 3 Cir. 1987). The state complies with discovery by making evidence available at a defendant's convenience. State v. Hooks, 421 So.2d 880 (La.1982). Where a defendant fails to avail himself of the right to inspect, there can be no reversible error. State v. Volpe, 447 So.2d 48 (La.App. 1 Cir.1984), writ denied, 450 So.2d 967 (La.1984).
In the instant case, the actions of the state as well as the ruling of the trial court provided defense experts with full access to the state crime lab for forensic testing. The court did not rule that the evidence could not be removed if the state's equipment proved inadequate. In fact, the order clearly indicates a willingness to release the evidence in such a case. Defendant never reapplied to the trial court complaining that the state's facilities were inadequate. This suggests that the defense expert was satisfied with the facilities of the state lab. In order to mandate reversal, there must be failure to comply with discovery procedures and defendant must be prejudiced by such non-compliance. Finding neither non-compliance nor prejudice, we find no merit to this assignment.
*991 ASSIGNMENT OF ERROR NO. 10:
Defendant argues that reversible error was committed when the prosecutor delivered an overly broad opening statement which failed to inform the defense of evidence to be presented at trial. Appellant also asserts that the trial judge acted improperly on its own motion by limiting defense counsel's opening statement. Appellant suggests that the trial judge "belittled" defense counsel with disparaging remarks which acted to prejudice the jury against defendant.
In its opening statement, the state is required to explain the nature of the charge and generally set forth the nature of the evidence to be introduced at trial. La.C.Cr.P. art. 766. Generally, evidence not within the scope of the opening statement should not be admitted at trial unless the trial court finds the state inadvertently omitted the evidence and defendant is not taken by surprise or prejudiced in preparation of a defense. La.C.Cr.P. art. 769. It is not necessary for the state to detail each piece of evidence in the opening statement. A generalized description of evidence to be introduced is sufficient. State v. Edwards, 406 So.2d 1331 (La. 1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). The purposes of these rules are to prevent surprise and allow adequate time for preparation of defense trial strategy. State v. Parker, 436 So.2d 495 (La.1983). Rulings as to the propriety of the scope of an opening statement are left to the sound discretion of the trial judge. State v. Kohler, 434 So.2d 1110 (La.App. 1 Cir.1983).
In the instant case, the district attorney's opening statement explained the nature of the charge, defining the crime and its essential elements. The prosecutor also informed the jury that the victim was killed by two shots from a semi-automatic weapon. The prosecutor specified where the victim's injuries were located and how the state alleges the injuries were caused. The statement included that the state would rely on photographs, expert testimony and testimony from police officers to establish by circumstantial evidence that the victim was intentionally killed by defendant. From the record it does not appear defendant was surprised by any evidence presented at trial or that he was prejudiced in preparation of a defense. At no time during trial did defense counsel object to a particular piece of evidence being beyond the scope of the opening statement. The opening statement complied with the requirements of the law. The trial judge did not err in denying defense counsel's motion.
Defense counsel chose to give an opening statement to the jury. The attorney specified in detail the facts of the case as contended by defendant. As counsel was closing the statement, he began giving a hypothetical fact situation to exemplify the concept of specific intent. Upon some unspecified physical gesture by the prosecutor indicating an objection, the trial judge admonished defense counsel for exceeding the limits of opening statement. A short discourse within hearing of the jury transpired between defense counsel and the judge regarding the merits of the ruling. After the jury was removed, defense counsel argued the court's actions discredited defense counsel and adversely influenced the jury against defendant. When the jury returned to the court, they were instructed by the trial judge not to draw any inferences from any ruling of the court.
At no time during a jury trial should a judge make disparaging remarks or criticize defense counsel. The purpose of this rule is to prevent prejudice to the defendant by giving the jury an impression of judicial partiality. Such improper comments constitute reversible error where they are such as to influence the jury and contribute to the verdict. State v. Johnson, 438 So.2d 1091 (La.1983).
The challenged exchange in the instant case was largely provoked by the argumentative posture of defense counsel. The trial judge's comments were essentially responses to defense counsel's argument. These comments were not indicative of partiality nor did they adversely affect a fair *992 trial. They did not operate to prejudice defendant in any manner. Finally, the trial judge protected the defendant's right to an impartial trial by admonishing the jury against drawing inferences unfavorable to the accused.
This assignment is without merit.
ASSIGNMENT OF ERROR NOS. 1, 2, 3, AND 4:
By these assignments defendant contends that the trial judge erred in ruling that crime lab results indicating blood alcohol contents of the defendant and the victim were inadmissible at trial. Appellant insists that the trial judge erroneously allowed a state expert to refer to other portions of the crime lab report and to draw conclusions from the report after excluding the portion regarding blood alcohol content. Appellant further claims that the trial judge erred in denying a defense motion for an instanter subpoena to a crime lab employee whose testimony would have established the reliability of the blood alcohol tests performed. Finally defendant argues that the trial judge erred in denying a defense motion for a new trial based on the asserted admissibility of the test results and on the failure of the state expert to inform the court of procedures developed by the crime lab to ensure reliability of these tests. Defendant alleges this failure affects the credibility of this witness by exhibiting his willingness to mislead the court.
During the cross-examination of an expert witness called by the state, defense counsel sought to question the witness concerning sections of the state crime lab report concerning the blood alcohol concentrations present in the blood of the victim and the defendant. The district attorney filed a motion in limine seeking to exclude any reference to the test results based on their unreliability and because defendant had not raised intoxication as a defense. Defense counsel argued that the test results should be introduced because the expert witness is required to state facts upon which his opinion was based. If the expert disregarded this part of the lab report, defendant asserts the expert's rationale for ignoring these facts affected his credibility and the weight to be afforded his conclusion. Defendant contends the omission from evidence of this information denied his right to present a defense. The trial judge ruled the evidence of the specific blood alcohol content was unreliable and irrelevant. However, the trial judge permitted general questions relating to whether the parties were intoxicated at the time of the incident.
Evidence of a defendant's intoxication may be properly excluded where the defendant has not filed a notice pursuant to La.C.Cr.P. art. 726. This statute requires a pretrial notice of an intention to raise a defense based upon a mental condition. State v. Quinn, 479 So.2d 592 (La.App. 1 Cir.1985); State v. Gipson, 427 So.2d 1293 (La.App. 2 Cir.1983). La.C.Cr.P. art. 726 is based upon Fed.R.Crim.P. 12.2. State v. Wade, 375 So.2d 97 (La.1979), cert. denied, 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980). Federal cases reviewing that article provide a helpful source for review of appellant's claim of the omission of the test results in the denial of the right to present a defense. In State v. Buchbinder, 796 F.2d 910 (7th Cir.1986), the court held that the exclusion of expert testimony regarding defendant's mental state was appropriate under federal procedural rules. The court ruled that defendant was not deprived of the right to present a defense because other testimony of defendant's mental condition at the time of the incident was introduced at trial. Therefore, defendant was not deprived of the substance of his defense at trial because those circumstances were presented to the jury. See also, U.S. v. Hillsberg, 812 F.2d 328 (7th Cir.1987), cert. denied, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).
In the instant case, defendant did not rely on a defense of intoxication precluding specific intent and did not file a notice pursuant to La.C.Cr.P. art. 726. Therefore, evidence of intoxication could have been excluded at trial. The record is replete with references to drinking and intoxication of both parties. The trial judge's determination to disallow reference *993 to specific blood alcohol concentrations successfully avoided unnecessary confusion of the issues. State v. Caldwell, 504 So.2d 853 (La.1987); State v. Lowdins, 412 So.2d 1349 (La.1982). By allowing general references to drinking and intoxication, the court permitted defendant to present evidence in support of his theory of the case, namely, that a tragic accidental shooting occurred when the intoxicated parties negligently mishandled a weapon.
Defendant also argues that the trial judge erroneously relied on State v. Rowell, 517 So.2d 799 (La.1988), in ruling that the test results were inadmissible as evidence. Although the court's ruling is based in part on the Rowell case it is also clear that the ruling is based in part on relevancy. Therefore, even if the trial judge misconstrued the effect of the Rowell holding, there is no error in the omission of the specific test results. Similarly, the denial of an instanter subpoena to a witness who would testify to the results of inadmissible blood alcohol tests does not constitute reversible error.
Appellant sought a new trial based upon the court's exclusion of blood alcohol results and because the failure of the state's witness to inform the court of revised procedures assuring the reliability of results adversely affected the witness' expert opinions.
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. La.C.Cr.P. art. 851. When the new trial motion asserts errors which are discussed in an assignment of error and found to be without merit, the new trial motion is not well-founded. State v. Sneed, 328 So.2d 126 (La.1976). Where the new trial is based upon newly discovered evidence which potentially undermines a witness' credibility, the denial of the motion is erroneous if the evidence is so material as to warrant a different result than that which was reached in the original proceeding. State v. Sanford, 465 So.2d 4 (La. App. 3 Cir.1984); State v. Bellows, 442 So.2d 889 (La.App. 3 Cir.1983).
As earlier discussed, the trial judge did not err in excluding the blood alcohol test results from evidence. Additionally, the fact that a state witness does not affirmatively inform the court of newly instituted procedures for analysis of blood for alcohol concentration does not suggest or impugn the credibility of the witness. Appellant cites no part of the record to suggest this witness perjured himself at trial. This is not a valid ground for arguing error in the court's denial of the new trial motion.
Finally, defendant asserts error in the trial court's ruling which permitted the expert witness to give opinions based on the crime lab report without reference to the blood alcohol content of the parties. Again, defendant asserts that the ruling prevented the jurors from accurately assessing the validity of the conclusions reached by the witness.
Every expert witness must state the facts upon which his opinion is based. La. R.S. 15:465; State v. Johnson, 475 So.2d 394 (La.App 1 Cir.1985), writ denied, 478 So.2d 143 (La.1985).
At trial, the state's forensic scientist was qualified as an expert in various fields. The witness stated that his opinions were based on autopsy and crime lab reports, photographs, and a personal view of the crime scene. On cross-examination defense counsel questioned the witness as to whether his investigation took into account the alcohol consumed by each party. The witness acknowledged that he was informed that the parties had consumed alcohol over a period of time. However, the witness testified that this factor played only a minor part in his conclusions.
The state's expert explained what facts were used in reaching his conclusions. Effective cross-examination by defense counsel allowed the jury to assess the credibility to be afforded those conclusions. There is no merit to this asserted error.
*994 ASSIGNMENT OF ERROR NOS. 5 AND 15:
By these assigned errors, defendant contends that the trial judge erroneously allowed the state's expert, James Churchman, to testify as an expert in "accident reconstruction" and to reach conclusion without proper foundation or investigative work. Furthermore, defendant argues that this expert testified, without proper investigation, as to the type of wounds suffered by the victim, the level of sounds made by the firearm during the incident, the trajectory of the bullets, and the position of the victim at the time of the shooting. Lastly, defendant asserts that testimony regarding the type of wound was beyond the witness' level of expertise.
The state witness, James Churchman, was from the state police crime lab. The witness possesses a bachelor's degree in zoology, one year of graduate studies in biology, and the experience of employment by the state crime laboratory since 1974. The witness also testified to attending numerous seminars in a broad variety of specialized fields concerning criminal investigation including crime scene reconstruction, the use of firearms, and ballistics in general. The witness also regularly attends autopsies of crime victims. After traversal by defense counsel, the witness was qualified as an expert in the field of criminalistics and, in particular, the following specialized areas of that field: firearms identification, ballistics, trace evidence and forensic comparison, crime scene investigation and reconstruction and forensic photography. Defense counsel stated that he had no objection to qualification of the witness.
Competency of an expert is a question of fact within the sound discretion of the trial judge. A ruling qualifying a witness as an expert will not be disturbed absent a manifest abuse of discretion. State v. Michel, 422 So.2d 1115 (La.1982); State v. Jones, 457 So.2d 110 (La.App. 2 Cir.1984), writ denied, 462 So.2d 207 (La. 1985). Experience, as well as education, may form the basis of expertise. State v. Robins, 499 So.2d 94 (La.App. 1 Cir.1986), writ denied, 500 So.2d 411 (La.1986).
Appellant's failure to object to the trial judge qualifying Churchman as an expert acts as a waiver of the right to raise the issue on appeal. La.C.Cr.P. art. 841. However, we find that the trial judge did not abuse his discretion by accepting the witness as an expert in the previously enumerated fields.
During testimony by Churchman, defense counsel objected to the qualification of the witness to testify as to whether or not the victim's wounds were the result of a firearm being in direct contact with the skin, and whether the sound of the gunshots would be muffled by such a shot. After further questioning, the trial judge ruled the witness was qualified to give such opinions in response to those questions. Again, the trial judge's qualification of the witness as to these matters was based on past experience of the witness. Qualifying the witness to testify as to these matters was not an abuse of discretion.
Although defendant insists the witness gave several opinions without proper foundation (i.e. the type of wound, gunshot sounds, trajectory of bullets and the position of the victim) the record again shows that defense counsel failed to lodge contemporaneous objections. Again it is noted, however, that the opinions testified to by the expert were based on both personal investigation as well as the investigation of others. Defendant's assertion that an expert may not testify based on information obtained from others is not correct. State v. Austin, 282 So.2d 711 (La.1973). The method by which evidence upon which an expert bases an opinion is gathered affects only the weight to be afforded the expert's conclusion. State v. Fallon, 290 So.2d 273 (La.1974).
In the instant case, defense counsel repeatedly made clear to the jury that the state expert was basing his conclusions in part on evidence gathered by others. In fact, defense counsel also called an expert who reached contrary opinions based on the investigation of others.
*995 For the reasons stated, these assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 12:
Defendant claims that the trial court erred by allowing the state pathologist to testify concerning the location of the victim's head at the time of the shooting based upon a sketch drawn by Churchman. Defendant contends that the drawing constitutes an improper foundation for an expert opinion and allowed the state to "create" evidence. It is asserted that the method employed by the prosecution precludes cross-examination of the expert's conclusions because the actual evidence has been lost or destroyed.
On rebuttal, the state sought to disprove the opinion of the defense expert that the victim's head was not in a position pressed against defendant's leg at the time of the shooting. The prosecution recalled Churchman who testified that during his investigation he observed bone fragments disbursed in a pattern around one of the bullet holes in defendant's jeans. Over objection, the witness was allowed to draw a schematic depiction of the pattern of bone fragments. Based on this drawing, a state pathologist testified the pattern would indicate that the bullet traveled through the victim's head, striking her jaw and forcing bone fragments onto defendant's leg. The pathologist reached a conclusion based on the clustered schematic pattern that the victim's head was in close proximity to defendant's leg.
The drawing depicting the pattern of bullet fragments was done by a witness qualified as an expert in crime scene investigation. A second witness, qualified as an expert in pathology, gave an opinion based on that drawing. As mentioned previously, an expert may base an opinion on a report or observation of other persons. State v. Fallon, supra; State v. Austin, supra. The suggestion by the defendant that the presence of bone fragments was invented by the prosecutor is rebutted by clear reference in the crime lab report to "[N]umerous bone fragments [were] detected around the margins of the uppermost entrance hole [in defendant's leg]." Again, defense counsel was able to make use of effective cross-examination to question the accuracy of the drawing and the validity of the pathologist's conclusion. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 14:
By this assignment, defendant argues that the trial court erred by allowing Churchman to testify that a silencer could be fitted onto the muzzle of the weapon which killed the victim. Defendant acknowledges that the trial court admonished the jurors to disregard the statement but alleges that the testimony resulted in irreparable prejudice.
The general rule regarding reversible error due to improper questioning, where the judge has ruled in defendant's favor and admonished the jury to disregard the question and response, is that there must be a clear showing that the matters complained of are of such an extreme prejudicial nature that the damage caused could not be erased from the minds of the jurors and that, as a consequence, the defendant was deprived of a fair and impartial trial. State v. Morris, 404 So.2d 1186 (La.1981); State v. Richardson, 529 So.2d 1301 (La.App. 3 Cir.1988).
The contested reference in the instant case occurred during direct examination of the state expert witness. The expert had testified in depth regarding the functioning of the weapon which killed the victim. When the prosecutor asked the witness to explain the purpose of the threaded muzzle, defense counsel entered a relevancy objection which the trial judge overruled. The expert responded that the weapon was designed so that a silencer could be installed. The court then ruled the testimony irrelevant and admonished the jury to disregard the answer. According to defendant, the prosecutor asked the question to interject the idea that a silencer was used. This would support the state's version of facts as to the locale of the shooting. Defendant alleges the question was intended to prejudice the defendant because the state was fully aware no silencer was on the weapon at the time of the shooting.
*996 The prosecutor's question did in fact elicit information not relevant to the case. However, the single reference to the silencer did not constitute the only evidence offered by the state to support its theory of where the shooting occurred. For this reason, the answer was not of such a prejudicial nature as to deprive defendant of a fair and impartial trial.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 7:
By this assignment of error, defendant contends that the trial court committed reversible error by prohibiting the defense expert from testifying about the types of facts needed before an expert is able to give valid opinions concerning the ability of defendant to perform certain maneuvers within the vehicle on the night of the shooting.
At trial, a defense witness, qualified as an expert in clinical and forensic pathology, contested the conclusions of the state's witnesses that the victim suffered a contact wound. This witness explained the basis for his opinion that the weapon's muzzle was not in contact with the victim's skin. The defense expert also disagreed with the opinion of the state experts regarding trajectory of the bullets and the position of the victim's head at the time of the gunshot. Finally, the witness opined that the victim's death was accidental.
During testimony, defense counsel asked this witness to explain the type of information necessary to accurately and completely reconstruct the scene and to make an "informed estimate" of what occurred in the car. The court ruled that the question sought to elicit an opinion outside the expertise of the witness, and sustained an objection to it.
The question in the instant case sought an opinion as to the information needed by a reconstruction expert to accurately reach conclusions. The question was posed to a witness whose expertise lay in the field of pathology. Although defense counsel sought to bring the question within the scope of the witness' expertise, the trial judge's ruling, in effect, was that the witness was not qualified to answer the question. The qualification of any witness is a question of fact. The judge's ruling in the instant matter does not constitute an abuse of discretion. State v. Michel, supra. Defendant argues that the ruling prevented defense counsel from questioning the credibility to be afforded the conclusions of the state expert. However, during cross-examination of the state's witness, defense counsel repeatedly questioned the witness concerning his failure to elicit certain facts and measurements before mentally reconstructing the crime scene. The trial court ruling did not operate to deny defendant the right to question the reliability of the conclusions reached by the state's expert.
This assignment of error does not have merit.
ASSIGNMENT OF ERROR NO. 6:
Defendant contends that the trial judge denied defendant's right to present a defense by excluding a videotaped reenactment of the incident. Defendant argues that the tapes corroborated defendant's version of the incident and rebutted the opinion of the state expert who had earlier testified that defendant's version was impossible. According to defendant, the ruling constitutes reversible error because defendant was prevented from discrediting damaging testimony of a key prosecution witness with an accurate reconstruction. According to defendant, any inaccuracy is minor and should not result in exclusion of the tape because the state is able to point out inaccuracies through effective cross-examination.
The criminal defendant has a constitutional right to present a defense. La. Const. Art. I § 16. To this end, a defendant should be allowed to present evidence on any relevant matter. State v. Shoemaker, 500 So.2d 385 (La.1987). However, the right to present a defense is not without limits. The state retains a legitimate interest in barring unreliable evidence from criminal trials. Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); Rault v. Butler, 826 F.2d 299 (5th *997 Cir.1987). The admissibility of a reconstruction in criminal trials is dependent upon the accuracy of the reconstruction being established as a predicate. State v. Boyer, 406 So.2d 143 (La.1981); State v. Brumfield, 329 So.2d 181 (La.1976). The exclusion of relevant evidence offered in defense of the accused is reversible error where a proper foundation concerning the reconstruction is laid. State v. Jones, 298 So.2d 774 (La.1974).
During trial, defendant sought to introduce a videotape reconstruction of the incident. The purpose stated was to rebut the testimony of the state's expert that defendant could not have operated the vehicle after the shooting from the passenger seat. After viewing the tape, the court ruled it was inadmissible because the reconstruction did not accurately depict the condition or the position of the parties. Most importantly, the court ruled that the reconstruction was inaccurate because the victim was laying across the seat instead of leaning against defendant as asserted by defendant in his testimony. The trial judge stated the discrepancy facilitated the subject's accessibility to the accelerator and provided easy access to the steering wheel which would not have been present under defendant's version of the facts.
As stated by the trial judge, the taped reconstruction submitted by defendant was not consistent with defendant's version of the facts. The significant inaccuracy in the placement of the victim during the reconstruction practically eliminated the probative value of the videotape. The reconstruction was, therefore, inconclusive in relation to its ability to corroborate defendant's story. Furthermore, the reconstruction presented a potential that collateral issues would be raised which would be unduly time consuming and confusing to the jury. Defendant testified fully as to his version of the incident. Defense counsel fully cross-examined the state's expert and in fact elicited the contested testimony of whether certain physical maneuvers were possible.
The exclusion of the videotaped reconstruction in the instant case based on the inconsistencies noted by the trial judge was not reversible error. Defendant was not denied the opportunity to effectively inform the jury of his version of the facts nor was defendant denied the availability of effective confrontation of the state's expert testimony. For these reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 13:
Defendant argues that the trial judge erred by permitting the state's expert witness to express his opinion as to questions of ultimate fact. Defendant contests three statements made by the state's expert in crime scene investigation and reconstruction that certain actions were not possible and that the shooting was not accidental.
The first statement is merely a statement by the expert that an individual could not have operated the vehicle from the passenger seat with the victim positioned as depicted by photographs introduced into evidence, without dislodging a beer can seen in the photographs. The second allegedly erroneous statement occurred when the district attorney repeated a hypothetical question originally posed by defense counsel. The witness testified that while an individual in the passenger seat might be physically able to touch the clutch with his left foot, and touch the steering wheel with one hand and accelerate with the other, if the body of the victim had not been there, such a contortion would be impossible with the victim positioned as indicated in the photographs. Moreover, according to the opinion of this witness, one could never succeed in actually operating this manual shift vehicle in such a contorted position.
During this new contested testimony defense counsel failed to object to the questioning or the expert's response. These alleged errors cannot be availed of on appeal. La.C.Cr.P. art. 841.
The third piece of testimony occurred after the prosecutor inquired on redirect examination of the same witness whether anything in his investigation would lead him to believe the shooting was accidental. Defense counsel objected that the question *998 exceeded the permissible scope of redirect. Because defense counsel had previously asked the witness whether he had considered the possibility of an accidental shooting, the trial court permitted the question. The witness stated that his conclusions "in fact establish that this could not have been an accident."
The objection to this testimony was not based on the ground that the expert was expressing an opinion as to a question of ultimate fact. A new basis for an objection cannot be raised for the first time on appeal. State v. Feeback, 414 So.2d 1229 (La.1982); State v. Hebert, 457 So.2d 877 (La.App. 3 Cir.1984). Therefore, this issue has not been preserved and is not properly before this court.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 8:
By this assignment of error defendant contends that the trial judge erroneously allowed repeated reference to hearsay statements made by the victim to state witnesses while excluding victim statements made to a defense witness during the same time frame. Defendant also argues that the trial court erred in excluding statements defendant made to his sister while allowing into evidence defendant's statements to police officers under similar circumstances and within the same time frame.
Initially it should be noted that, although there were a number of references to defendant's statements made at the police department and the hospital following the incident, defense counsel made no objections to such testimony and actually elicited the testimony in some instances.
Examples of statements by defendant that were admitted are these: at the police station he said, "Help! Help! Andrea is in the car. I think she blew her head off." And, "I'm Ty Trahan. I've been shot in my left leg, and my girlfriend, they shot her head off. She is outside in the car. Please help." At the hospital he told an officer he was driving, heard a shot, looked down, and saw that Andrea had been shot and was bleeding. It was here that he told an officer, "If you think I shot her, nobody would have ever found the body because I am not crazy." He repeatedly asked a doctor how his girlfriend was doing.
When defense counsel called defendant's sister to relate statements made to her by defendant over three hours after the shooting, the prosecution timely objected.
Statements that are part of the res gestae are not hearsay. Former La.R.S. 15:447, now repealed and replaced by La. C.E. art. 801(D)(4). Res gestae includes statements which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. Former La.R. S. 15:448, now repealed and replaced by La. C.E. art. 801(D)(4). The amount of time which elapses between the criminal act and the statement is not the sole consideration in determining whether a statement is part of the res gestae. State v. Armstrong, 453 So.2d 1256 (La.App. 3 Cir.1984), writ denied, 457 So.2d 16 (La.1984).
Defendant was still in the hospital when he made certain excluded statements to his sister, but he had already been treated for his wounds and over three hours had elapsed when he made these statements. The trial court was within its discretion in ruling that those statements were inadmissible. Assuming, however, that the exclusion of the statements was erroneous, such error is not reversible. Several other witnesses testified to the emotional condition of defendant as well as his repeated expressions of concern about the condition of the victim. Defendant's sister was also allowed to testify about her brother's emotional state at the hospital. The trial court's ruling did not operate to deny substantial rights of the accused and does not constitute reversible error. La.C. Cr.P. art. 921; State v. Williams, 454 So. 2d 1211 (La.App. 2 Cir.1984), writ denied, 461 So.2d 313 (La.1984); State v. Necaise, 466 So.2d 660 (La.App. 5 Cir.1985).
As to the victim's statements referred to by two of the state's witnesses, defense counsel failed to lodge hearsay objections. The failure to object acts as a *999 waiver of the issue on appeal. La.C.Cr.P. art. 841. In any event, the victim's declaration of her intention to discontinue her relationship with defendant was admissible to establish defendant's motive because there was evidence to show that that intention was actually communicated to defendant. State v. Doze, 384 So.2d 351 (La.1980). From the testimony of Tracy Morgan, the victim's intentions were in fact communicated to defendant at the lounge.
Finally, defendant argues that the trial judge erroneously excluded the testimony of a defense witness concerning events which transpired at 2:00 p.m. on the afternoon prior to the shooting. After defense counsel asked the witness to recount what occurred between the victim and defendant, the prosecutor entered a hearsay objection. Defense counsel sought to introduce the conversation as part of the res gestae. The trial court ruled any statements would not form part of the res gestae.
The incident subject to the contested testimony occurred at defendant's home and some 15 hours before the shooting. Defense counsel was given the opportunity but was unable to establish the requisite connexity between this incident and the shooting. It seems clear there was a break in the sequence of events of several hours such that the contested incident was not part of a single continuous transaction. Therefore, the trial judge did not err in finding statements made during this incident did not constitute a part of the res gestae of the crime.
For the reasons stated, the asserted errors in this assignment have no merit.
ASSIGNMENT OF ERROR NO. 9:
Defendant contends the trial court erred in prohibiting defense counsel from introducing the autopsy report and forbidding a defense expert from making reference to the contents of the report. According to defendant, the report was admissible as support for the conclusions reached by the defense expert and was essential to the defense. The inability of the state expert to include references in the report concerning details later solicited in testimony diminished the credibility of the witness, according to appellant.
At trial, L.E. Remus, a state pathologist who performed the autopsy on the victim testified as to the cause of death, the trajectory of the bullets, and the positioning of victim's head in relation to defendant's leg. He gave his opinion that the victim suffered one contact wound. This witness testified from memory and did not use the autopsy report while testifying. The state's criminalistics expert referred to the autopsy when discussing the firearm which discharged the bullets and the trajectory of the bullets. Prior to the testimony of his pathologist defense counsel sought to introduce the autopsy report. The trial judge denied the request because the state pathologist had not used the report in testifying. The defense pathologist repeatedly informed the jury that his opinions were in part based on the autopsy report. This witness testified that the report contained no reference to a contact wound and that such information should be included in such a report. The state pathologist was recalled. Defense counsel questioned him concerning the failure to include reference to a contact wound in the autopsy report and about inconsistencies between his trial testimony and the contents of the autopsy report.
The state pathologist testified from personal observations concerning the victim's injuries and cause of death. As an expert, this witness was qualified to give opinions based on his observations. La.R. S. 15:463, 464. Although La.C.Cr.P. art. 105 provides that an autopsy report is competent evidence to establish the fact of and cause of death, it was never intended to preclude other competent evidence. State v. Winzer, 354 So.2d 533 (La.1978). The article does not create a right for either party to have a complex report submitted to the jury. State v. Daigle, 440 So.2d 230 (La.App. 3 Cir.1983), writ denied, 444 So.2d 123 (La.1984).
Although the court ruling excluded the autopsy report from evidence, the record fails to support defendant's assertion of his *1000 expert's inability to make reference to the report as a basis for his conclusions, or how the exclusion of the report otherwise adversely affected the defendant. The testimony of his expert clearly informed the jury of a difference of opinion with the state expert and the reasons therefor. Furthermore, defense counsel was able to elicit extensive testimony establishing that the state expert failed to include various pieces of information in the autopsy report which the expert testified to at trial. Defendant was not denied the right to confront the conclusions of the state pathologist and to cross-examine that witness by reference to omissions in the autopsy report. The jury was also adequately informed that the defense pathologist was basing his opinion on facts contained in the autopsy report. The ruling by the trial judge did not prevent the jury from being thoroughly apprised as to the contents of the report and does not constitute error.
There is no merit to this assignment of error.
ASSIGNMENT OF ERROR NO. 18:
By this assignment, defendant argues that the trial court erred in excluding the testimony of a defense witness for violation of the rule of sequestration. Although acknowledging a violation, defendant contends the extreme remedial measure of exclusion constituted an abuse of discretion as the testimony would not have been influenced by the violation and would have substantially strengthened the defense. The trial judge's actions, it is asserted, had the effect of suggesting to the jury that defendant was trying to place false testimony into evidence.
A trial court is authorized to order the witnesses be excluded from the courtroom and refrain from discussing the facts of the case or the testimony of any witness with anyone other than counsel in the case. Former La.C.Cr.P. art. 764, now La.C.E. art. 615. The purpose of the rule is to assure that a witness testifies from his own knowledge without being influenced by testimony of prior witnesses and to strengthen the role of cross examination in developing the true facts. State v. Warren, 437 So.2d 836 (La.1983); State v. James, 447 So.2d 580 (La.App. 3 Cir.1984). Although the trial judge is vested with much discretion in shaping remedial measures for violation of a sequestration order, exclusion of testimony may become constitutionally impermissible if it interferes with a defendant's right to present a defense. State v. Jones, 354 So.2d 530 (La. 1978); State v. Huntley, 438 So.2d 1188 (La.App. 3 Cir.1983). Only where the sequestration violation was committed with the consent, connivance, procurement or knowledge of the defendant or defense counsel may the judge exclude the testimony. State v. Jones, supra; State v. Jones, 496 So.2d 638 (La.App. a Cir.1986). Any erroneous exclusion of testimony will not result in reversal unless substantial rights of the defendant are prejudiced or violated. La.C.Cr.P. art. 921; State v. Warren, supra.
In the instant case, defense counsel called Ceaser Simon to testify on behalf of defendant. The witness testified he was familiar with the gun which discharged the fatal shots, and that he saw it misfire on an earlier date. According to his testimony, the gun discharged three times when the trigger was pulled once. On cross examination, the witness admitted that he intentionally spoke to defendant about the subject matter of his testimony the previous weekend, after being advised of the rule of sequestration. The trial court found the violation required exclusion, apparently disbelieving the assertion that there was only a passing reference to the misfire incident. The trial judge, out of the jury's presence, found the witness guilty of contempt of court. When the jury was returned, the judge ordered that the testimony be disregarded.
The violation of the sequestration order was committed with the knowledge and connivance of defendant. The trial judge did not abuse his discretion in excluding the testimony. Even if exclusion was an unduly harsh remedial measure, the testimony was merely cumulative with testimony given by the defendant and two other witnesses as to the operation of the firearm. *1001 Under such circumstances any impact from exclusion is minimal, would not prejudice substantial rights of defendant and does not constitute reversible error. See, Warren, supra; Jones, supra; Huntley, supra.
For the reasons stated, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 19:
Appellant claims that the evidence presented at trial was insufficient to support a guilty verdict of second degree murder. Defendant asserts that the victim's death was a tragic accident and argues that the circumstantial evidence presented at trial did not establish beyond a reasonable doubt that the appellant intentionally killed the victim.
When reviewing a conviction, an appellate court views all evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could conclude that the state proved defendant's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1978). "When the case involves circumstantial evidence, the defendant is additionally entitled, under the provisions of La.R.S. 15:438, to have jurors instructed that they must be satisfied that the overall evidence `excludes every reasonable hypothesis of innocence'." State v. Jacobs, 504 So.2d 817 (La.1987). However, the circumstantial evidence and Jackson tests are not completely separate. "Ultimately, all evidence, direct and circumstantial must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden." State v. Poretto, 468 So.2d 1142, 1146 (La. 1985); State v. Wright, 445 So.2d 1198 (La.1984).
Appellant was charged with second degree murder under the provisions of La.R. S. 14:30.1(1) which required the state to prove he had the specific intent to kill or to inflict great bodily harm. Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Even though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Boyer, 406 So.2d 143 (La. 1981). The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Graham, 420 So.2d 1126 (La.1982).
In the instant case, defendant admitted the victim died as a result of a gunshot discharged from a firearm held in his hand when the shooting occurred. When an individual purposely discharges a firearm pointed directly at a victim from a short distance, specific intent to kill or inflict great bodily harm may easily be inferred. State v. Noble, 425 So.2d 734 (La.1983). Therefore, the only issue at trial would be whether defendant intentionally shot the victim.
At trial, the state presented expert testimony that the positioning of the wounds as well as bone fragments discovered on defendant's pants established that the victim's head was near or against defendant's leg when the gunshots were discharged. Also, the state's expert witnesses opined that one of the shots occurred when the weapon was in direct contact with the victim's skin. The other wound was caused by a shot in close proximity to the skin. The expert in firearms testified that the gun was functioning properly and would discharge twice only if defendant pulled the trigger mechanism two times. Although a defense expert expressed his belief that the victim's death was accidental, the verdict indicates the jury rejected the theory of accident and lack of specific intent. This conclusion was within the discretion of the jurors. Viewing the evidence presented in a light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt to the crime of second degree murder. This assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 20:
By supplemental assignment of error, appellant argues the trial court committed *1002 reversible error in failing to grant a mistrial or to admonish the jury after the district attorney made improper statements in soliciting evidence of other crimes from a state witness. Appellant contends that during the redirect examination of Traci Morgan, the prosecutor improperly solicited testimony that a friend of appellant in Raylee's Lounge passed out from using valium and had to be taken home by appellant. According to appellant, this testimony unfairly prejudiced appellant by implying he was involved with persons using drugs and that he was somehow responsible for his friend's condition.
We do not believe that this assignment of error is properly before this court, for the following reasons.
The trial judge allowed defense counsel to file a supplemental assignment of error after formal assignments had been briefed and thirteen days prior to argument in the appellate court. The trial judge granted an order of appeal on April 5, 1988 with a return date set forty-five days after payment of costs. The record was lodged in this court on June 27, 1988. On June 29, 1988, this court received nineteen assignments of error filed by defense counsel. Appellant thereafter filed a brief on July 25, 1988 and a reply brief on September 13, 1988. Oral argument was requested and set for March 22, 1989. On March 9, less than two weeks before oral argument, appellant returned to the trial court and sought permission pursuant to La.C.Cr.P. art. 916 to supplement the record with an additional assignment of error. The motion stated that "(i)n preparing the assignments of error the defendant's counsel overlooked a specific assignment of error which should have been included." At no time prior to this motion had defense counsel sought an extension of time on the return date or an extension to file assignments of error. The trial court allowed the filing and ordered the assignment forwarded to the appellate court.
An appellant is required to file formal assignments of error within a time period specified by the trial judge but not later than five days prior to the return date. La.C.Cr.P. art. 844. The trial judge is divested of jurisdiction over a case upon entering an order of appeal except for certain limited purposes. The trial judge is expressly provided jurisdiction to receive assignments of error, to extend the return date of the appeal and to extend the time for filing assignments of error. La.C.Cr.P. art. 916(1), (5). In analyzing articles outlining appellate procedure it is necessary to consider those articles in conjunction with one another in light of the purposes behind the procedural articles.
In State v. Ash, 257 La. 337, 242 So.2d 535 (1970), the court reviewed a situation where the appellant sought to file formal bills of exceptions after expiration of the return date set by the trial court. The court held an appellant's failure to perfect bills of exceptions before the return date would preclude review of the issues absent a request to the trial court for an extension of time.
In State v. Flanagan, 254 La. 100, 222 So.2d 872 (1969), an appellant was ordered to perfect bills of exceptions by July 1, 1968. Appellant moved for, and was granted, an extension of both the return date and the date for filing bills of exceptions to July 28, 1968. Appellant filed bills of exceptions on July 30 which the trial court refused to accept. On review, the court interpreted La.C.Cr.P. art. 916(1) and ruled that once the return date had expired the trial court lost jurisdiction to permit filing of assignments of error.
In State v. Lavene, 343 So.2d 185 (La. 1977), the court discussed appellate procedure in light of amendments in Act 207 of 1974 which replaced the bills of exceptions with the assignments of error procedure. The court stated the purpose was "to grant the trial court full authority to extend the time for filing assignments of error at any time after the appeal is granted, including after the record is lodged in the appellate court. The tenor of these amendments was that this authority should be liberally exercised in favor of affording appellants their day in the appellate court." Lavene, supra at 187.
*1003 The common thread running through these cases is the recognition that the defendant's right of appellate review at times conflicts with the necessity of orderly appellate procedure. The court in Lavene faced a situation where a rigid application of procedural rules would preclude any review even though defense counsel had moved for and had been granted several extensions of time to file assignments of error. The delays in the appellate process were caused by an inability of a court reporter to prepare the trial transcript.
However, the instant case poses an altogether distinct situation. Defense counsel filed 19 assignments of error in the trial court on June 28, 1988. Eighteen assignments were argued in briefs filed with the appellate court. Over eight months after formally assigning errors and less than two weeks before oral argument, appellant sought the trial court's permission to file an additional assignment of error. At no time prior to this motion had appellant moved the court for an extension of time to file additional assignments of error. To sanction this procedure by ruling that the trial judge retains jurisdiction to permit filing of supplementary assignments of error at such a late stage in the appellate process would be contrary to the goals of orderly appellate procedure. To permit the procedure would allow defense attorneys and defendants to circumvent statutory time limits and prevent final resolution of a case because the appellant, after filing and briefing assignments could merely motion the trial court for leave to file additional assignments. At no time did appellant seek an extension of time to file assignments of error under art. 916(1). Although the ruling that we are making here prevents appellant from raising this new issue on appeal, appellant is not precluded from review of the issue. Louisiana procedural law protects the rights of appellant by providing an avenue of review for belated claims through post-conviction relief. La. C.Cr.P. art. 924 et. seq.
For these reasons, it is the holding of this court that assignment of error number 20 was not properly perfected and is beyond the scope of appellate review. However, out of an abundance of caution and, in the interests of judicial economy should our supreme court disagree with us, the merits of this assignment will be reviewed.
During presentation of the state's case, Traci Morgan, a close friend of the victim, testified concerning the activities of the appellant and victim on the night of the incident. Morgan testified that she accompanied the victim to the lounge and observed appellant with two other girls. While the pair were preparing to play pool, appellant had to leave to take one of the girls home because she "was feeling ill." The witness then related other activities in the lounge which occurred after appellant returned. During cross-examination of this witness, defense counsel emphasized the number of drinks consumed by the witness and the victim. Defense counsel sought to qualify the witness' level of perception by inquiring whether the witness was as intoxicated as the girl that had passed out and was taken home by appellant. On redirect, the district attorney asked the witness if her condition precluded an awareness of what was transpiring around her. The prosecutor then asked whether she had knowledge of the nature of the illness of the girl who had passed out. Over hearsay objection, the witness testified that appellant informed her the girl had taken valiums. The witness then answered affirmatively when asked if the girl had arrived with appellant. Defense counsel moved for a mistrial on the grounds that the testimony of the use of valium by appellant's friend constituted an improper reference to another crime committed by appellant. Additionally, defense counsel argued the prosecutor improperly submitted irrelevant testimony of narcotics use to prejudice the jury against appellant.
Appellant bases his argument on both the mandatory mistrial provisions of La.C. Cr.P. art. 770 and the discretionary provisions of La.C.Cr.P. art. 771. Article 770 reads in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a *1004 court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
Generally, a witness is not a "court official" within the context of Article 770. However, where the prosecutor deliberately elicits impermissible references to other crimes, the testimony of a witness is imputable to the state. State v. Boudreaux, 503 So.2d 27 (La.App. 1 Cir.1986).
The reference to use of valium by a friend who accompanied appellant to the lounge does not fall within the purview of Article 770 requiring mistrial when the state makes reference to another crime committed by the defendant. Nothing is present in the testimony to suggest appellant was illegally using narcotics or supplying narcotics to his friend. Reference to drug abuse by an individual accompanying a defendant does not lead to the inevitable conclusion that the defendant is also involved in drug use. Therefore, Article 770 is not applicable in the instant case.
Inflammatory and prejudicial comments not covered by Article 770 may be dealt with by either an admonition or a mistrial. La.C.Cr.P. art. 771. Mistrial is a drastic remedy. Determination to grant a mistrial under Article 771 lies within the discretion of the trial judge and should be granted only where the improper remarks of the witness causes substantial prejudice depriving defendant of a fair trial. State v. Narcise, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Cupit, 508 So.2d 996 (La. App. 2 Cir.1987), writ denied, 514 So.2d 1174 (La.1987).
The witness' testimony of drug use by appellant's friend was irrelevant but did not have the severe prejudicial effect asserted by appellant. Where an individual is accused and the state introduces evidence tending to prove an intentional killing, it is difficult to envision how the instant reference to drug use by appellant's friend could cause undue prejudice affecting appellant's right to a fair trial. Finally, although the testimony appears to have been erroneously introduced, appellant may not argue that the trial judge erred in not admonishing the jurors when defense counsel failed to request an admonition. State v. Johnson, 443 So.2d 766 (La.App. 3 Cir.1983), writ denied, 445 So.2d 451 (La.1984).
For these reasons, this assignment of error does not present grounds to reverse the conviction.
The conviction is affirmed.
AFFIRMED.