503 So.2d 27 (1986)
STATE of Louisiana
v.
Ulen BOUDREAUX.
No. KA 86 0383.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
Rehearing Denied February 19, 1987.
*28 Jackie Marve, Asst. Dist. Atty., Houma, for appellee-State.
Bernard Levy, Houma, Arthur A. Lemann, III, New Orleans, for appellant-Ulen Boudreaux.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
Defendant, Ulen Boudreaux, was charged by bill of information with indecent behavior with a juvenile, in violation of La.R.S. 14:81. Defendant was tried by jury, which convicted him as charged, and he was subsequently sentenced to serve eighteen months imprisonment at hard labor. He has appealed, urging four assignments of error, to wit:
(1) the trial court erred in denying defendant's motion for mistrial based upon testimony of other crimes;
(2) the trial court committed reversible error in allowing Nancy Rumage to give testimony as to the ultimate facts at issue in the case;
(3) the verdict of the jury is contrary to the law and evidence; and
(4) the sentence imposed is excessive.
Assignments of error three and four were not briefed on appeal and are, therefore, considered abandoned. Uniform Rules  Courts of Appeal, Rule 2-12.4.

FACTS
The victim of the instant offense is defendant's stepdaughter. She, her brother and their mother began residing with defendant when the victim was approximately one year of age. Defendant ceased living with the mother and her children on August 1, 1984, when he and the victim's mother separated, and he left the family residence.
The victim was twelve years old at the time of trial. She testified that, from the time she was four years of age until the night before her mother and defendant separated, whenever her mother was not at home defendant would get on top of her and "stick his finger in [her] private" and *29 "stick his private in [her] private and it wouldn't fit." The acts committed against her by defendant were not always the same.
The victim's brother, who is a year older than the victim, testified that, when he was seven or eight years old, defendant made him get on top of the victim and made them French kiss. At the time, all three had removed their clothes. The victim gave testimony corroborating the incident.
The victim's mother testified that, as a result of a telephone call she received during December of 1984, she questioned the victim as to whether or not defendant had touched her in any way. As a consequence, the victim indicated that defendant had fondled her. The mother then filed a complaint with the Terrebonne Parish Sheriff's Office. During an interview, conducted by Detective Jackie Malbrough of the Terrebonne Parish Sheriff's Office, the victim made a much more detailed disclosure regarding the crimes committed against her by defendant.
After filing the complaint with the sheriff's office, the victim's mother took the child to South Louisiana Medical Center for an examination by a physician. The examining physician, Dr. Marion Bellecci, testified that she conducted an examination to determine whether the victim's hymen was intact. The results showed it was. Dr. Bellecci further testified, however, that in order to rupture the hymen penetration in excess of one inch would be required, otherwise it would remain intact. Subsequently, the mother secured psychological and counseling assistance for her daughter.

OTHER CRIMES EVIDENCE

(Assignment of Error 1)
Defendant contends the trial court erred in denying his motion for mistrial based upon impermissible testimony of other crimes. He argues that the prosecutor, intentionally and in bad faith, elicited testimony regarding another crime without giving a Prieur notice. He asserts that the result was to deny him his rights to a fair trial and due process as guaranteed by the United States and Louisiana Constitutions. He concludes that the pertinent testimony substantially prejudiced him and he should, thus, have been granted the requested mistrial. The state argues the trial court's ruling was within its discretion and the trial court's admonition to the jury, to disregard the pertinent testimony, sufficiently protected defendant's rights.
During direct examination of the victim's brother, the prosecutor asked the witness whether or not he had ever seen defendant do anything wrong to the victim. In response, the witness related an incident when defendant called the victim into the master bedroom at their residence. Thereafter, the witness heard the victim say "stop". The witness then picked the lock to the bedroom door, entered and saw defendant on top of the victim in the bed with the covers over them. Defendant threatened to hurt the children's mother if the witness ever told anyone what he had seen.
Shortly after the foregoing testimony, the testimony to which this assignment relates was adduced, as follows:
Q Did Buddy [defendant] do anything else to you?
A He had put me on the side the bed and stuck me up the butt.
Defense counsel then advised the court he had a motion to make outside the presence of the jury. The jury and the witness were removed from the courtroom. Defense counsel informed the trial court that the exact testimony had been discussed with Judge Ellender prior to the instant trial and that Judge Ellender had ruled the testimony was evidence of another, different crime, not part of the res gestae. Defense counsel also stated that he had not been given Prieur notice. In moving for a mistrial, defense counsel stated that he thought the prosecutor knew what the witness' testimony would be. In response, the prosecutor stated:
This matter had been previously set to go to trial on two other occasions. The first time we did have a conference in Judge Ellender's library concerning acts perpetrated by the defendant on [the victim's brother]. We never went on record *30 at anytime as to what the ruling of the court would be. My position at that time was because the bill of information charges that the defendant committed these acts from 1979 until June of 1984 that this was simply an act that would constitute part of the res gestae. We talked about it extensively. We even argued to the court. As I recall the conversation of the conference, there was no formal ruling. I anticipated this objection and it is still my position that the acts perpetrated upon [the victim's brother] constituted a part of the res gestae. [Emphasis added.]
In reference to whether or not the pertinent testimony of the witness constituted res gestae, the trial court opined that it would be necessary to determine the point in time of the occurrence of the pertinent incident to which the witness had made reference. To make that determination, the court indicated that the witness would have to be questioned in regard to the time frame of the incidents and, if the offense allegedly committed against the witness occurred at a time other than the time of the incident that the witness testified had occurred between defendant and the victim, the court would not consider it as part of the res gestae. The prosecutor then stated to the trial court that she was sure the witness could give testimony of his age at the time of the pertinent incident or that it had occurred between the time frame set forth in the bill of information as to the time of the offense charged. The trial court stated it disagreed with the prosecutor's contention and ruled to the effect that the act allegedly committed against the witness was not part of the res gestae. In denying defendant's motion for a mistrial, the trial court held that an admonition was sufficient to dispel any possible prejudice to defendant. The trial court also indicated it had not understood the witness' allegation and doubted the jury had understood the allegation either, because the court was nearer to the witness than was the jury. In further comments, the trial court stated that the prosecutor would be required to instruct the witness to refrain from further testimony of incidents concerning himself. The prosecutor agreed to so instruct the witness. Thereafter, the jury was returned to the courtroom, and the trial court admonished the jury to disregard the witness' last statement.
The general law applicable to other crimes evidence, and the res gestae exception thereto, is set forth in State v. Haarala, 398 So.2d 1093, 1097 (La.1981), as follows:
As a general rule, the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime. State v. Monroe, 364 So.2d 570 (La.1978); State v. Sutfield, 354 So.2d 1334 (La.1978). This rule results from the belief that admission of this type character evidence creates a great risk of unjust convictions because the jury is likely to give the evidence excessive weight and convict the defendant merely because he is a bad man, because the defendant may well be unprepared to face such attacks, and because the jury is likely to be confused by proof of collateral issues. State v. Prieur, 277 So.2d 126 (La.1973); Comment, Other Crimes Evidence in Louisiana, 33 La.L.Rev. 614 (1973).
The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence § 218 (3d ed. 1940). In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48. A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res gestae exception is required. See State v. Schwartz, 354 So.2d 1332, 1334 (La.1978) and cases cited therein. This close connexity in time and location is essential to the exception because no notice of the state's intention to introduce evidence of offenses which are part of the res gestae is required. See La.C. Cr.P. art. 720; State v. Prieur, supra; *31 Pugh, Louisiana Evidence Law 100-01 (Supp.1978) excerpting 35 La.L.Rev. 525, 526-27 (1975).
This Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence § 218 (3d ed. 1940).
See also State v. Kahey, 436 So.2d 475 (La.1983) and State v. Sanford, 446 So.2d 1381 (La.App. 1st Cir.1984).
While arguing the objection out of the presence of the jury, the prosecutor admitted that the incident when the defendant allegedly stuck the victim's brother "up the butt" was at a time other than that when the brother went into the bedroom and saw the defendant sexually abusing the victim. The prosecutor made no offer of additional facts about the "other crime" incident to show it came under the res gestae exception. The mere allegation by the prosecutor that the "other crime" incident occurred during the five year period charged in the bill of information is insufficient to bring this incident within the res gestae exception. The state has not shown a close connexity between the charged offense and the "other crime" incident. The state has not shown the "other crime" offense is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. Instead, the record shows that, after the trial judge sustained the defendant's objection, he directed the prosecutor to instruct the witness not to mention incidents concerning himself, and the prosecutor acquiesced in this ruling. The state then proceeded to successfully present its case without this evidence. The ruling of the trial court on the res gestae issue is correct. However, the trial court committed error by only admonishing the jury, instead of granting a mistrial.
A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney or a court official, during trial or in argument, would require a mistrial on motion of defendant. La.C.Cr.P. art. 770(2); State v. Perry, 420 So.2d 139 (La.1982). As a general rule, because a state witness is not a "court official" within the meaning of La.C.Cr.P. art. 770, the provisions of La.C.Cr.P. art. 771, rather than La.C.Cr.P. art. 770, would apply. See State v. Perry. However, the jurisprudence reflects that impermissible reference to another crime deliberately elicited from a state witness by the prosecutor would be imputable to the state and would mandate a mistrial. State v. Madison, 345 So.2d 485 (La.1977); State v. Overton, 337 So.2d 1201 (La.1976).
Based on the prosecutor's own statement, she deliberately elicited the objectionable evidence of another crime from the witness. The prosecutor admitted that the admissibility of the substance of the testimony had been previously discussed extensively and argued before Judge Ellender. She stated that she anticipated the objection of defense counsel, and she maintained the reference to another crime was admissible as part of the res gestae. Under these circumstances, the presentation of the inadmissible evidence is clearly imputable to the state. Thus, the trial court *32 committed reversible error by not granting defendant's motion for mistrial.
This assignment of error has merit.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are reversed, and this case is remanded to the trial court for further proceedings in accordance with law.[1]
REVERSED AND REMANDED.
NOTES
[1] Because we find merit in assignment of error 1, it is unnecessary to pass on assignment of error 2.