569 So.2d 1038 (1990)
STATE of Louisiana
v.
Rock Allen LEE.
No. Cr90-65.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
Rehearing Denied December 7, 1990.
J. Michael Small, Alexandria, Celia R. Cangelosi, Baton Rouge, for defendant-appellant.
Joseph P. Beck, II, Dist. Atty., Colfax, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
STOKER, Judge.
On March 7, 1988, defendant, Rock Allen Lee, was indicted by a Grant Parish Grand Jury for second degree murder, a violation of LSA-R.S. 14:30.1. Due to extensive pretrial publicity, defendant's motion for change of venue was granted and his case was transferred to the Fifteenth Judicial District Court in Lafayette Parish. Trial was held and a 12-person jury found defendant guilty of manslaughter, a responsive *1039 verdict to second degree murder and a violation of LSA-R.S. 14:31. Defendant was sentenced to 18 years at hard labor. Defendant appeals his conviction assigning 17 assignments of error. However, assignments of error numbers 4, 8, 11, 12, 14 and 16 have not been briefed by defendant and are thus considered abandoned.[1]State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
On August 14, 1987, defendant, Rock Allen Lee, and the victim, 13-year-old Henry Griffen, went together on a camping trip at the Stuart Lake Recreational Area in Grant Parish, Louisiana. Auxiliary Sheriff's Deputy Frank Glenn observed defendant and the victim on two occasions while patrolling the area. The first such occasion was when defendant and the victim were setting up a tent. The second was when Deputy Glenn asked the two if they needed any help. The deputy testified that he saw nothing out of the ordinary on either occasion. When he left the patrolling area at 10 p.m. he did not see them.
The next morning, at approximately 8 a.m., defendant drove his vehicle to the Rapides General Hospital Emergency Room with the lifeless body of Henry Griffen on the passenger side. Dr. Reid, the on-duty physician at the emergency room that day, determined that the victim died of a gunshot wound to the chest. Dr. Reid also determined that the victim had been dead for at least four hours, based on the fact that rigor mortis had set in. Dr. Reid, when speaking with defendant, observed that he showed no emotion. The doctor also testified that defendant had brought in the victim's body.
The first police officer to arrive at the hospital was Patrolman Kenneth McCall. After defendant was identified as the one who brought the victim to the hospital, Officer McCall took defendant into a hallway, advised him of his Miranda rights, and began to question him as to the events surrounding the shooting. Defendant stated that he knew nothing about the shooting, but only that when he woke up that morning the victim was stiff and had a strange look on his face. Defendant then changed his story, stating that he had shot the victim, but that it was an accident. He further informed Officer McCall that the gun which killed the victim was at his trailer. At this point Officer McCall called his supervisor, Sergeant Barron, into the room. Defendant reiterated that he had shot the victim, but that it was an accident. Shortly thereafter, Detective Brad Sudduth arrived at the hospital. The officers took defendant to another room in the hospital where they again advised him of his Miranda rights and questioned him further. When Detective Sudduth asked what had happened, defendant again stated that he had accidentally shot the victim. Defendant did not answer when asked why he had shot the boy. In response to further questioning, defendant stated that he and the victim had a disagreement which arose from the victim playing in the campfire. The victim eventually went to sleep in the tent, but defendant remained awake, still bothered by his earlier argument with the boy. Defendant then stated that he picked up the shotgun which was in the tent. Defendant said something was telling him to do it and something was telling him not to do it. Then "something clicked" and he pointed the weapon at the boy and fired. Defendant then told of going home, changing clothes and putting the shotgun away. Detective Sudduth again asked defendant why he had shot the victim. Defendant replied that he had been under a lot of pressure from his family and job. Defendant then stated that he had been raped by a male coworker and that he had had sex with another male friend.
The .410 gauge shotgun which killed the victim was recovered from defendant's trailer with a spent cartridge inside. A firearms comparison determined that the spent cartridge had been fired from that weapon. Dr. George McCormick, accepted by the court as an expert in forensic pathology, testified that the fatal shot was fired *1040 from extremely close range, as shown by the powder burns on the victim and the small size of the shotgun wound. Dr. McCormick also testified that the victim had lain on his back for a considerable period of time, perhaps several hours, after his death.
It was adduced at trial through the testimony of Dorothy and Melodie Griffen, the victim's mother and sister, respectively, that defendant convinced the victim to go camping with him by giving the impression that the trip was one involving the victim's fellow Boy Scouts, several of whom would accompany them on the campout. In reality, only defendant and the victim were to go camping.
Dr. Paul Ware testified on behalf of defendant. After examining defendant, Dr. Ware concluded that he was suffering from schizoid personality disorder and chronic organic brain syndrome. The doctor gave his opinion that these conditions contributed significantly to the strange behavior of the victim following the shooting, i.e., withdrawn, emotionless behavior. Defendant also presented several character witnesses.
Defendant was convicted by a jury of manslaughter and sentenced to 18 years at hard labor. He now appeals his conviction to this court. We reverse and remand for a new trial.

OPINION
ASSIGNMENTS NOS. 1 AND 13:

IRRELEVANT AND PREJUDICIAL TESTIMONY
Defendant contends on appeal that the trial court erred in overruling appellant's objections and motion for mistrial and in allowing evidence of the following: (1) Testimony regarding police questioning as to whether defendant had sex with the victim and defendant's negative response; and (2) testimony as to defendant's statement to the police that he had been under a lot of pressure, and one of the reasons for it was that he had been raped by a male coworker and he had had sex with a male friend. In a prior hearing on a motion to suppress this evidence, the trial judge deferred his ruling to the trial on the merits.
The record reflects that Officer Kenneth McCall twice testified as to sexual conduct between defendant and the victim. The first such answer is found in the record as follows:
"Q: Did he say anything else after that?
"A: I think Detective Sudduth asked him if he had sex with the boy."
Defense counsel objected at this point, whereupon the jury was removed from the courtroom and defense counsel made a motion for mistrial. The trial court denied the motion for mistrial, but sustained defendant's objection and admonished the jury to disregard Officer McCall's nonresponsive answer. The second occasion on which Officer McCall referred to defendant's denial of sex with the victim appears in the record as follows:
"Q: What did he say then? Referring to the defendant, what did the defendant say then?
"A: He said that he had not had sex with the victim."
Defense counsel again objected, but the trial court simply instructed the witness to answer the question asked, rather than readmonishing the jury.
The next objectionable reference to sex which defendant cites occurred during the testimony of Detective Brad Sudduth and appears in the record as follows:
"Q: Okay. He was at Campsite 21. What did you ask him after that?
"A: I asked Mr. Lee if he had any sexual relations with the victim.
"Q: What was his response?
"A: It was an immediate no."
In addition to the above, the State offered evidence of statements made by defendant that he had been raped by a coworker and had sex with another male friend, as follows:
Officer McCall testified:
"MR. BECK: (CONTINUING)
"Q: ... If you would just as closely as you can to the very words that he used, would you tell us what he indicated *1041 was the cause of this pressure that he had related?
A: He stated that his parents was real strict on him. That his co-workers picked at him at the job, slapping him and pulling his hair. He stated a co-worker by the name of Charles Hall raped him.
* * * * * *
"MR. BECK: (CONTINUING)
Q: Okay. Would you restate that. It was interrupted.
A: That his parents was real strict. His co-workers picked at him all the time. They would pull his hair, slap him. A co-worker by the name of Charles Hall had raped him. He could not tell his parents this.
That a friend, him and a friend, had went to a lounge or a store, and drank some beer. They came back to his trailer and that his friend had sex with him.
Q: And this was what was stated to you and the other two officers?
A: Yes, sirNo, sir, not at the time.
Q: Who was present at the time?
A: Myself, at that time.
Q: Was this repeated in the presence of the other two officers?
A: Yes, sir. I called them back in the room or they came back in the room and I asked him to repeat why he was under pressure to Detective Sudduth.
Q: And did he do so?
A: Yes, he did.
Detective Sudduth testified:
Q: Okay. After Officer McCall had told you about that, what did you do?
A: I went back into the room. Officer McCall asked Mr. Lee to tell me what he had just told him. Mr. Lee then advised me that he was raped by a man that he worked with and that he had had sex with another male friend of his."

1.
The trial judge held this evidence was admissible under the "state of mind" exception to the hearsay rule. The trial judge also ruled that the probative value of the evidence outweighed its prejudicial nature under LSA-C.E. art. 403.

2.
Defendant contends that the testimony as to his homosexual activity with others and his denial of sexual activity with the victim was irrelevant to the prosecution of the second degree murder charge and highly prejudicial to his defense. Defendant argues that the State thereby suggested to the jury that he intended to, attempted to or actually did molest the victim, although there was no evidence of such. Therefore, the testimony should have been excluded under LSA-C.E. art. 403 because its probative value, if any, was outweighed by its prejudicial effect.

3.
The State argues that the trial judge correctly admitted the testimony under the "state of mind" exception to the hearsay exclusionary rule, LSA-C.E. art. 803(3), since it was relevant to show defendant's condition at the time of the incident. The State also argues that the testimony was admissible as part of defendant's confession or as an exculpatory statement.

4.
Initially, we note that statements by an accused are considered admissions by a party-opponent and are non-hearsay. LSA-C.E. art. 801D(2). Therefore, it is unnecessary to establish the admissibility of the statements under an exception to the hearsay rule.
The testimony as to incidents of homosexual sex is evidence of crimes against nature, in violation of LSA-R.S. 14:89. Evidence of other crimes which do not constitute part of the res gestae are inadmissible unless offered to prove system, knowledge, motive or intent. LSA-C.E. art. 404(B). When the State intends to offer evidence of other crimes under LSA-C.E. art. 404(B):
(1) The State shall within a reasonable time before trial furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. No such notice is required as to evidence *1042 of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony.
(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses.
(3) Prerequisite to the admissibility of the evidence is a showing by the State that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered.
(4) When the evidence is admitted before the jury, the court, if requested by defense counsel, shall charge the jury as to the limited purpose for which the evidence is received and is to be considered.
(5) Moreover, the final charge to the jury shall contain a charge of the limited purpose for which the evidence was received, and the court shall at this time advise the jury that the defendant cannot be convicted for any charge other than the one named in the indictment or one responsive thereto.
State v. Prieur, 277 So.2d 126 (La.1973); LSA-C.E. art. 1103 and Authors' Notes.
The indictment and bill of particulars state that defendant was charged with second degree murder in that he had a specific intent to kill or commit great bodily harm to the victim. Defendant was not charged with murder committed while engaged in the perpetration or attempted perpetration of a felony (i.e., rape). However, the evidence as to defendant's homosexuality and the questions as to sexual activity with the victim are arguably relevant to circumstantially show a general motive, when taken together with the evidence that defendant deceitfully arranged to be alone with the victim on the camping trip, the victim's age, and defendant's argument with the victim during the camping trip. The possible existence of a sexual motive for the murder tends to establish specific intent.
However, in order to have independent relevance, the motive established by the other crimes must be more than a general one, such as gaining wealth, which could be the underlying basis for almost any crime; it must be a motive factually peculiar to the victim and the charged crime. State v. Sutfield, 354 So.2d 1334 (La.1978). Evidence of defendant's homosexuality only establishes a general motive. Without additional evidence indicating a motive to commit the particular crime involved in this case, the evidence of homosexuality should not be admitted to prove motive. Even if relevant, because the evidence of other offenses is so strongly prejudicial, the greatest care ought to be taken to reject such evidence unless it is plainly necessary to prove something which is really at issue. State v. Moore, 278 So.2d 781 (La.1973). It is generally accepted that the trial judge should exclude circumstantial evidence, even though logically relevant, if its probative value is outweighed by the risk that its admission will consume too much time, unnecessarily confuse the jury concerning issues to be determined, tend to excite the emotions of the jury to the undue prejudice of the opponent, or unfairly surprise the opponent. State v. Ludwig, 423 So.2d 1073 (La.1982), cited in State v. Porretto, 468 So.2d 1142, 1148 (La.1985).
In Porretto, the Supreme Court held that impeachment testimony concerning the homosexuality of a state witness, although arguably relevant to the defense theory that the state witness and impeachment witness were both involved in the murder, was inadmissible for impeachment purposes or as direct evidence because the danger of unfair prejudice, confusion of issues and undue delay outweighed its probative value.
We hold that the evidence of defendant's homosexuality was inadmissible because of danger of unfair prejudice, and confusion of issues outweighed any probative value it had. There was absolutely no evidence of homosexual activity between the victim and defendant. The prejudicial effect of the evidence outweighs its tenuous probative value under LSA-C.E. art. 403. The admission of this evidence violated *1043 defendant's constitutional rights as set forth in Prieur, supra, at 130:
"Our Constitution specifically requires that the defendant be given notice of the offense for which he will stand trial so that he can know the nature and cause of the accusation in order to prepare his defense. Art. I, Sec. 10. It permits him full confrontation and cross-examination, which require prior knowledge of the offense and the circumstances so that he may adequately exercise these constitutional rights. Art. I, Sec. 9. It requires due process and trial for the offense before an impartial jury. Art. I, Secs. 2, 9."

5.
Generally a reviewing court should only reverse a conviction when substantial rights of the accused have been violated by the introduction of inadmissible evidence. State v. Green, 493 So.2d 1178, 1185 (La. 1986). The circumstances before us would ordinarily require that we consider whether the admission of the inadmissible evidence constituted harmless error. We pretermit any consideration of harmless error because in our discussion which follows, dealing with assignment of error number three, we find mandatory reasons for reversing the conviction and sentence and remanding the case for a new trial.

ASSIGNMENT 3: MOTION FOR MISTRIAL
Defendant contends that the references by the State witnesses to defendant's homosexual activities, which were deliberately elicited by the prosecutor, are imputable to the State and mandate a mistrial under LSA-C.Cr.P. art. 770(2).
LSA-C.Cr.P. art. 770(2) states:
"Art. 770. Prejudicial remarks; basis of mistrial
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:"
* * * * * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;"
* * * * * *
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
As a general rule, because a state witness is not a "court official" within the meaning of LSA-C.Cr.P. art. 770, the provisions of LSA-C.Cr.P. art. 771, rather than LSA-C. Cr.P. art. 770, would apply. However, the jurisprudence reflects that an impermissible reference to another crime deliberately elicited by the prosecutor would be imputable to the State and would mandate a mistrial. State v. Madison, 345 So.2d 485 (La.1977); State v. Trahan, 543 So.2d 984 (La.App.3d Cir.1989); State v. Boudreaux, 503 So.2d 27 (La.App.1st Cir.1986). The reference must be to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Madison supra. The denial of a mistrial upon motion by a defendant complaining of a remark reprobated by Article 770 is per se a substantial violation of the defendant's rights. The court of appeal is not free to speculate what the jury might have found had the defendant's rights not been violated. State v. Green, 315 So.2d 763 (La.1975); State v. Felix, 556 So.2d 1317 (La.App.3d Cir.1990); State v. Andrews, 527 So.2d 411 (La. App.4th Cir.), writ denied, 532 So.2d 176 (La.1988).
While arguing the objection by defendant out of the presence of the jury, the prosecutor admitted that he deliberately intended to elicit the testimony concerning defendant's homosexuality in order to demonstrate defendant's state of mind at the time of the incident. The trial judge held that the statements were admissible under the "state of mind" exception to the hearsay *1044 rule and were not too prejudicial under LSA-C.E. art. 403. Regardless of the purpose for which the defendant's out-of-court statements were elicited by the prosecutor, the statements did make reference to other crimes.
Under these circumstances, the presentation of inadmissible evidence is clearly imputable to the State. Thus, the trial court committed reversible error by not granting defendant's motion for mistrial.

CONCLUSION
For the reasons given, defendant's conviction is reversed, the sentence is vacated and the case is remanded for retrial.
REVERSED AND REMANDED.
DOMENGEAUX, C.J., dissents and assigns reasons.
DOMENGEAUX, Chief Judge, dissenting.
The majority considers the police officers' testimony concerning the defendant's admission of prior homosexual activity to be evidence of "another crime committed or alleged to have been committed by the defendant." Such evidence is inadmissible and reference to it by the judge, prosecutor, or court official is proscribed in La.C. Cr.P. art. 770(2). However, I decline to adopt the majority's characterization of the testimony at issue.
The comments complained of were unsolicited remarks made by the interrogating officers in the course of their description of the defendant's confession. The reference to prior homosexual activities was not specific as to person, place, or time and there was no indication as to whether the defendant had ever been arrested or convicted of crimes against nature, in violation of La. R.S. 14:89.
This case is similar to State v. Richardson, 466 So.2d 762 (La.App.4th Cir.1985), where the police officer testified that the defendant gave two aliases, had no identification, and falsified her name. Evidence of Richardson's criminal conduct upon arrest was not found to be substantially prejudicial and a mistrial was not warranted.
Likewise, vague evidence alluding to one homosexual encounter experienced by the defendant, which evidence was not specifically elicited by the prosecutor, does not mandate a mistrial under La.C.Cr.P. art. 770. Therefore, I dissent.
NOTES
[1] Since we have resolved this case based on Assignments 1, 3 and 13, we do not discuss the remaining Assignments of Error as they are moot.