590 So.2d 720 (1991)
STATE of Louisiana
v.
Glenn COOK and Linn Cook.
No. CR-91-018.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*721 Harold Van Dyke, Pineville, Harold Murry, Alexandria, for defendants-appellees.
Cliff Strider, Kathrine Williamson, Asst. Dist. Attys., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
STOKER, Judge.
This is an appeal by defendants, Glenn Cook and Linn Cook, from their convictions for attempted first degree murder in violation of LSA-R.S. 14:27 and 14:30. They were each sentenced to forty-five years at hard labor. Defendants appeal both their convictions and sentences based on seventeen assignments of error. Due to our holdings on two errors, we will not discuss the other assignments. We reverse and remand for a new trial.

FACTS
Defendants were each originally charged with two counts of attempted first degree murder of two Alexandria city police officers. Defendants were also charged with attempted second degree murder of a man in an unrelated incident which occurred two days earlier. On November 14, 1989, each defendant entered a guilty plea to the reduced charge of attempted manslaughter. The charge of attempted second degree murder and the second count of attempted first degree murder were nolle prossed as part of a plea bargain.
On the date set for sentencing, March 29, 1990, defendants moved to withdraw their guilty pleas on the basis that they misunderstood the terms of the plea agreement. The trial court allowed the pleas to be withdrawn. The State then reinstituted all charges by a new Bill of Information on August 7, 1990, and reset the case for trial. The State severed Count 3 (attempted second degree murder) and proceeded only on the two counts of attempted first degree murder at trial.
The testimony adduced at trial showed that Officers Keith Delaney and F.K. Johnson of the Alexandria City Police Department were on routine patrol in the city. The Bethel Apartments had been patroled by the officers on several occasions during their shift because the complex is located in a high crime area.
At approximately 5:00 a.m. on March 17, 1989, the officers responded to a call that there had been a shooting at the apartments. As they approached the apartments, Officer Delaney observed three black males run behind one of the buildings. One of the men stepped from behind the building and fired a shot in the direction of the officers. As they sped away, the officers heard ten to fifteen more shots fired at them. Neither of the officers were able to identify the men firing the shots, but they could tell that the shots were fired from two guns. Linn Cook and his identical twin brother, Glenn Cook, were later arrested in connection with the incident.
At trial, the two police officers testified to their involvement as set forth above. The State also called Ron King, a local drug dealer, who testified that defendants were selling drugs for him on the morning in question. King also testified that he saw defendants shoot at the officers.
Edward Daugherty also testified for the State. Daugherty had previously given statements to the State implicating defendants. Daugherty had told an investigator with the District Attorney's Office that defendants had arrived at his mother's house after the shooting and told him "we was *722 firing at a police car". He had also told the investigator that defendant Linn Cook told him "we were shooting at them fuck ass policemen" and that defendant Glenn Cook told him "we was shooting at them." However, his testimony at trial was that he had lied in his prior statements to law enforcement officials because of threats that he would be put in jail.
Another witness produced by the State was Patrick Norris, who testified that he was present at the incident and saw defendants shoot at the police officers. An inmate, David Harrell, testified that he heard defendants admit to the shooting while in prison with him. Also, he heard Linn Cook threaten to "take care of" Patrick Norris.

OPINION
The defendants have assigned a number of errors and we note certain errors patent in the face of the record. One of the assignments of error has merit and requires that we reverse the defendant's convictions, vacate the sentences and remand the case for a new trial. For this reason, it will not be necessary that we discuss the other assignments or the errors patent.
Among the assignments defendants alleged as error is the introduction at trial of other crimes evidence. Defendants were both charged with attempted second degree murder in relation to an unrelated incident which occurred two days prior to the incident which resulted in the charges for attempted first degree murder. The attempted second degree murder charge was severed from the charges tried herein. Prior to the trial herein, the State was instructed not to introduce the attempted second degree murder charge into evidence. However, at trial the attempted second degree murder charge was mentioned by one of the State's witnesses, Patrolman Newman Bobb (one of the arresting officers), in response to a question by the State's attorney, as follows:
"Q Were you aware at that time of an outstanding arrest warrant for Linn Cook?
A Yes, I was.
Q Do you know what that arrest warrant was for?
A I believe it was attempted second degree murder."
Defendants moved for a mistrial, on the basis of LSA-C.E. art. 404(B) and LSA-C.Cr.P. art. 770, which preclude the introduction of irrelevant other crimes evidence to prove the defendants' bad character or to establish a likelihood that the defendants also committed the crime for which they were tried. The trial judge decided that the remark was not prejudicial enough to warrant a mistrial.
LSA-C.Cr.P. art. 770(2) states:
"Art. 770. Prejudicial remarks; basis of mistrial
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:"
* * * * * *
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;"
* * * * * *
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
This court discussed the same situation in State v. Lee, 569 So.2d 1038 at 1043 (La.App. 3d Cir.1990), as follows:
"As a general rule, because a state witness is not a `court official' within the meaning of LSA-C.Cr.P. art. 770, the provisions of LSA-C.Cr.P. art. 771, rather than LSA-C.Cr.P. art. 770, would apply. However, the jurisprudence reflects that an impermissible reference to another crime deliberately elicited by the prosecutor would be imputable to the State and would mandate a mistrial. State v. Madison, 345 So.2d 485 (La.1977); State *723 v. Trahan, 543 So.2d 984 (La.App.3d Cir. 1989); State v. Boudreaux, 503 So.2d 27 (La.App.1st Cir.1986). The reference must be to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Madison supra. The denial of a mistrial upon motion by a defendant complaining of a remark reprobated by Article 770 is per se a substantial violation of the defendant's rights. The court of appeal is not free to speculate what the jury might have found had the defendant's rights not been violated. State v. Green, 315 So.2d 763 (La.1975); State v. Felix, 556 So.2d 1317 (La.App.3d Cir.1990); State v. Andrews, 527 So.2d 411 (La.App.4th Cir.), writ denied, 532 So.2d 176 (La.1988)."
See also, State v. Meshell, 332 So.2d 767 (La.1976); LSA-C.E. art. 404(B), Authors' Note (10); G.W. Pugh and J.R. McClelland, Evidence, 37 La.L.Rev. 575 at 580 (1977).
The cases cited above, as well as the case before us, turn on the pivotal point of whether the prohibited evidence was deliberately elicited by the prosecutor and therefore is imputable to the State, mandating a mistrial under LSA-C.Cr.P. art. 770. These cases are clearly distinguishable from cases in which the prohibited testimony is voluntary and unresponsive to the prosecutor's questions and the form of the prosecutor's questions does not indicate bad faith on the part of the State. In that situation, the granting of a mistrial is at the judge's discretion, under LSA-C.Cr.P. art. 771. See State v. Joseph, 437 So.2d 280 (La.1983); State v. Harper, 430 So.2d 627 (La.1983); State v. Smith, 418 So.2d 515 (La.1982); State v. Moore, 575 So.2d 928 (La.App.2d Cir.1991).
In the case before us, the State's attorney contended that Officer Bobb had made a "slip of the tongue" in saying "second degree" instead of "first degree". However, the State admits in its appellate brief that the officer's response was the correct answer to the question.
The issue was discussed at a hearing prior to trial and the State was admonished by the trial judge not to introduce evidence of the attempted second degree murder charge and told to warn its witnesses not to mention it. Apparently, though, Officer Bobb later told the defense counsel that the State's attorney did not tell him not to mention the attempted second degree murder charge.
Given the pretrial discussion of the issue, the trial judge's admonition not to mention the matter and the fact that Officer Bobb gave the correct answer to the State's question, we can only infer that the State deliberately elicited the testimony concerning the prohibited other crimes evidence from its witness. The State was apparently attempting to establish the defendants' bad character and guilt through evidence of another similar crime. The trial judge committed reversible error by not granting defendants' motion for mistrial.
Of course, we note that the testimony as to the charge of attempted second degree murder actually only involved Linn Cook. Therefore, we must consider whether Glenn Cook also suffered prejudice sufficient to merit a reversal of his conviction under this assignment. We believe he did.
Essentially, Glenn Cook suffered substantial prejudice through guilt by association. Glenn is Linn's identical twin brother. Other evidence at trial established that the defendants sold drugs together and that they both shot at the policeman. They had, in fact, both been charged with attempted second degree murder. The danger was great that the jury could have drawn the prejudicial inference that Glenn was also involved in the charged crime of attempted second degree murder or even that the actual perpetrator of that crime was Glenn instead of Linn. See State v. Franklin, 353 So.2d 1315 (La.1977); State v. Velez, 588 So.2d 116 (La.App. 3d Cir. 1991); State v. Kent, 489 So.2d 1354 (La. App. 1st Cir.1986); Note, Ensuring Effective Assistance of Counsel for the Criminal Co-Defendant, 37 La.L.Rev. 1289 at 1295 (1977). Moreover, had the trial judge properly granted a mistrial, it would have applied to both Glenn and Linn Cook, since they were being tried jointly.
*724 Therefore, the trial judge committed reversible error in denying defendants' motion for mistrial.

CONCLUSION
For the reasons given, the defendants' verdicts are reversed, their sentences are vacated and the case is remanded for a new trial.
REVERSED; VACATED; REMANDED FOR NEW TRIAL.
DOMENGEAUX, C.J., dissents and assigns reasons.
DOMENGEAUX, Chief Judge, dissenting.
I respectfully submit that the majority opinion erred in reversing defendants' verdicts, vacating their sentences and remanding for new trials on the basis that the trial judge committed reversible error in denying defendants' motion for mistrial based on alleged prejudicial remarks.
Concerning Patrolman Newman's response to the question referred to in the majority opinion, I would find no manifest error on the part of the trial judge, when he stated the following at defendants' hearing on a motion for new trial:
"I think the remark by Officer Bobb was unintentional. I think it was probably in response to a question that he did not fully understand. I think it made no difference to the jury in their finding. I think it was an innocuous remark, and I can see no prejudice whatsoever on the defendants because of that remark."
Arriving at this conclusion, I would then address the numerous other errors assigned by defendants.
I respectfully dissent.