687 So.2d 470 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Eliza CLARK, Defendant-Appellant.
No. CR95-1354.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
*471 Michael Harson, Lafayette, Keith A. Stutes, Asst. Dist. Atty., for the State.
G. Paul Marx, Lafayette, for Eliza Clark.
Before KNOLL, WOODARD and DECUIR, JJ.
KNOLL, Judge.
This criminal appeal addresses the State's use of impeachment evidence to rebut defendant's testimony on his own behalf that he was not the person involved in the charged *472 offense and that he never possessed a sawed-off shotgun, the weapon used in the present offense. At issue is the propriety of the State's use of a video tape of defendant, Eliza Clark, using a sawed-off shotgun in an armed robbery which occurred prior to the present offense.
The State charged the defendant, Eliza Clark, by bill of information with one count of armed robbery, a violation of La.R.S. 14:64. The defendant filed a written plea of not guilty in which he waived formal arraignment. After a two-day trial, a twelve member jury found the defendant guilty as charged. Subsequently, the sentencing court sentenced the defendant to 15 years at hard labor. Approximately two years later, the trial court granted the defendant, who was then unrepresented, an out-of-time appeal. After the out-of-time appeal was granted, we ordered the district court to hold a hearing at which the defendant was advised of the dangers and disadvantages of self-representation. Although defendant stated he did not want to be represented by counsel, the trial court referred defendant to the Indigent Defender's Office for the appointment of counsel. Defendant now appeals his conviction, alleging one assignment of error.

FACTS
On March 2, 1992, the defendant, together with several other individuals, entered a Cracker Barrel store in Lafayette. The defendant, armed with a sawed-off shotgun, ordered the store clerk to open the cash register and put the money in a paper bag. After giving defendant the money, as the clerk escaped through the store door, and defendant fled. Shortly thereafter, the police apprehended the defendant. After defendant's arrest, the store clerk from the Cracker Barrel identified the defendant as the armed robber.

REBUTTAL IMPEACHMENT EVIDENCE
The defendant contends that the trial court erred in allowing the State to impeach his trial testimony through the introduction of a video tape and testimony of a robbery victim in an unrelated crime. Before addressing defendant's argument, we will detail the facts which framed the State's introduction of the video tape.
During its case-in-chief the State questioned the store clerk, Joe Mata, about the weapon used to rob the Cracker Barrel, and introduced State's Exhibit 3, a sawed-off shotgun he identified as being very similar to the weapon used the night of the robbery.
At the close of the State's case-in-chief, defendant chose to testify in his own defense. During direct examination of defendant, the following colloquy occurred between defense counsel and the defendant:
Q: Mr. Clark, do you own any weapons?
A: No, I don't.
Q: You saw this weapon that was exhibited here?
A: No, I didn't.
Q: Did you see it in court?
A: I seen it in court.
Q: Did you ever see that weapon before?
A: No, I didn't.
Q: Are you positive?
A: I'm positive.
Q: You don't know who owns it?
A: No, I don't.
Q: Did you use it that night?
A: I couldn't use it. I didn't have it. No, I didn't.
Q: Did you ever lay hands on that weapon?
A: No, I didn't.
On cross-examination, the State asked the defendant, "... is it your testimony today that you've never had this gun in your possession at any time, either on March 2nd, 1992 or any time before or after that?" Defendant responded, "I never had that gun." The defendant further testified that he was not the person who committed the robbery.
After the conclusion of the defendant's presentation of evidence, the State introduced rebuttal impeachment testimony. In particular, the State introduced a video surveillance tape of an armed robbery which took place on February 16, 1992, at a Complete Stop store in Lafayette, approximately two (2) weeks before the armed robbery in *473 question. The State questioned Richard Perez, the store clerk at the time of the February 16th robbery, about the identification of the person who robbed the store and the type of weapon used in the robbery. Perez stated that the robber was armed with a small sawed-off shotgun, and identified State's Exhibit 3 as being identical to the weapon used in the February 16th robbery. The State then asked Perez if the individual who held the gun in the February 16th robbery was in the courtroom. Perez, pointing to the defendant, replied, "Right over there in the green shirt." Perez further testified that a surveillance video was made of the February 16th robbery. Perez stated that he viewed the video and that it accurately portrayed the events that occurred. When the State moved for the introduction of the tape into evidence for the jury to see, defense counsel objected, stating:
I've reviewed the tape as well, and I would object to the introduction of this tape for the following nonexclusive reasons: Namely, number 1, that whatever is viewed in that film may represent a crime allegedly being occurred, but it hasn't been proved to the satisfaction and no crime has been charged against an individual in which this particular individual was either found guilty or charged or pled guilty to it. Secondly, viewing this film for whatever purpose would prejudice the jury and inflame the jury against this accused. And, of course, furthermore, Your Honor, the objects in there, he may resemble the individual, but that doesn't prove without a doubt that the weapon in the film is the same as the weapon which is here nor does it show the individual in the film is the same individual. There are no identification features. And that's the basis for objecting to the introduction of this viewing by the jury.
In response to defense counsel's argument, the State elaborated as follows:
[T]he limited purposes in this case are that the defendant testified that he had never possessed or even seen, for that matter, that gun any time prior to or after March 2nd, 1992. And the evidence is simply being introduced solely for the effect of impeaching his testimony on the question of his knowledge of the gun, as well as it may go to the identification issue that may be involved in this case.
After carefully considering the defense objection and the State's response, the trial court admitted the video into evidence, stating:
Well, the court has to look at the probative value versus the prejudicial effect that it may have on the jury in considering whether or not to allow this impeachment evidence. Key issues in the case are identification of the defendant and the defendant's defense that he had never seen the weapon. So that makes the identity of the weapon ... as the weapon that was used in the robbery, which is a critical element of the crime, as well as the identity of the defendant; key points in the prosecution's case; and the defendant's blanket denial that he had ever seen that gun either before or after the alleged offense; and the obvious clarity of his identity and the gun's identity on the video, the Court feels the best interest of justice would be served to allow it into evidence, and I will allow it.
(Emphasis added).
Before allowing the jury to view the video, the trial court instructed the jury as follows: "Ladies and Gentlemen, this evidence is not to show that the defendant committed any other crimes or any other bad acts, but only to show any possible way that it may tend to show that his testimony was untruthful or inaccurate when he testified earlier."
On appeal, defendant argues the video tape and testimony of the prior robbery should not have been admitted. We disagree.
At trial, not only did the defendant deny that he was the person who committed the robbery, he also denied that he had ever seen or been in possession of the sawed-off shotgun introduced as State's Exhibit 3, the weapon identified by the robbery victim as being very similar to the weapon used on the night in question. Since the defendant placed his identity as well as the gun's identity at issue, we find that the evidence of the *474 prior robbery was relevant impeachment testimony. Furthermore, we find that the probative value of the evidence outweighed any prejudice suffered by defendant.
We further note that the State asserted in its brief that no Prieur notice was given in the present case, and cites State v. Silguero, 608 So.2d 627 (La.1992), appeal after remand, 616 So.2d 1346 (La.App. 3 Cir.1993), for the proposition that notice was not necessary in the present case. We agree.
In Silguero the Louisiana Supreme Court stated:
Within a reasonable time before trial the state must furnish defendant with a statement in writing of the criminal acts or offenses it intends to offer in evidence specifying the exception to the general exclusionary rule upon which it relies for admissibility. State v. Prieur, 277 So.2d 126 (La.1973); La.Code Evid. art. 1103. Absent evidence that the state evaded Prieur notice requirements by deliberately reserving its other crimes evidence for cross-examination or rebuttal, the Prieur notice requirements do not apply where, as here, defendant, through his own testimony, makes the other crimes evidence relevant. (Citation omitted). The record does not reveal that the state withheld using the other crimes evidence in its case-in-chief to circumvent Prieur notice requirements. Thus, under the circumstances, the other crimes evidence was admissible without Prieur notice.
Silguero, 608 So.2d at 630; (Emphasis added).
In the case sub judice, the defendant alleges, "The State could have relied on the procedure in the `other crimes' provisions of the jurisprudence and statutes to determine whether in fact the other robbery could be used in its case." However, instead of developing this argument, the defendant claims that "the State set up the Defendant by a relatively innocuous question about the gun, clearly planning to cause an avalanche." Defendant states nothing to support this claim. This is purely argumentative.
Even considering the defendant's assertion, we find it meritless. Defense counsel "opened the door" to this issue by asking defendant if he had ever seen the exhibited weapon. Defendant positively denied ever seeing or being in possession of the weapon. Thus, we find that the defendant has not shown the State purposely evaded Prieur requirements by reserving the other crimes evidence for rebuttal. More importantly, the defendant, through his own testimony, made the other crimes evidence relevant by denying his involvement in the robbery and by denying that he had ever been in possession of State's Exhibit 3. Therefore, we conclude that the other crimes evidence in the present case was admissible rebuttal impeachment testimony that did not require a Prieur notice.
After reaching this conclusion, however, we caution that our holding in the case sub judice must be read within the context of the limited facts presented. Moreover, we are favored with the trial court's careful review of the video tape prior to its introduction into evidence, as well as its tempered admonition to the jury to consider the limitations under which the video tape was presented. Thus, as presented herein, once the defendant's credibility became an issue because of his own denials, we find that the video tape was properly admitted into evidence.
For the foregoing reasons, we find no merit to the defendant's assignment of error.

ERRORS PATENT
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
Our review of the record shows that the defendant's sentence is illegally lenient. La.R.S. 14:64 requires that a sentence for the offense of armed robbery be imposed without benefit of parole, probation, or suspension of *475 sentence. In the present case, the sentencing court did not state that defendant's sentence was to be served without benefit of parole, probation, or suspension of sentence. Thus, the sentencing court imposed an illegally lenient sentence.
The Louisiana Supreme Court addressed the issue of an illegally lenient sentence in State v. Jackson, 452 So.2d 682 (La.1984). The court stated:
However when a defendant alone appeals and the record contains a patent error favorable to the defendant, the appellate court should ignore the error, unless the prosecution, having properly raised the issue in the trial court, has sought appellate review.
Jackson, 452 So.2d at 684.
In the present case, the State has not complained of the lenient sentence. Therefore, we do not recognize this leniency as an error patent.
La.Code Crim.P. art. 880 provides that when imposing sentence the trial court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, we amend the sentence to reflect that the defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required. Instead, we remand this case and order the trial court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La.3/30/95), 651 So.2d 858.
La.Code Crim.P. art. 930.8 also provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La. Code Crim.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, so prescription is not yet running. The purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance. Thus, we direct the district court to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).

DECREE
We affirm the defendant's conviction, but remand the case for the trial court to amend the commitment and minute entry of defendant's sentence to reflect that defendant is given credit for time served. Upon remand the court is directed to inform defendant of La.Code Crim.P. art. 930.8's three year prescriptive period for filing postconviction relief by sending written notice of such prescriptive period to defendant within ten (10) days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
WOODARD, J., dissents and assigns reasons.
WOODARD, Judge, dissenting.
I respectfully disagree with the majority's conclusions concerning the admissibility of the videotape and certain testimony of Perez, under the facts of this case.
The issue about which the State was attempting to impeach Clark was limited to whether he had ever seen the sawed-off shotgun before March 2, 1992. However, in the process of impeaching Clark, the State was permitted to offer cumulative evidence, through the use of the videotape and the direct testimony of Perez, of a prior bad act, namely the February 16th holdup.
The trial court gave the following explanation for admitting the video:

*476 [T]he Court has to look at the probative value versus the prejudicial effect that it may have on the jury in considering whether or not to allow this impeachment evidence. Key issues in the case are identification of the defendant and the defendant's defense that he had never seen the weapon. So that makes ... the identity of the weapon as the weapon that was used in the robbery, which is a critical element of the crime, as well as the identity of the defendant; key points in the prosecution's case; and the defendant's blanket denial that he had ever seen the gun before or after the alleged offense; and the obvious clarity of his identity and the gun's identity on the video, the Court feels the best interest of justice would be served to allow it into evidence, and I will allow it.
There are obvious problems with the trial court's analysis. First, the court never considered the admissibility of the tape or the testimony. Before even getting to the 403 balancing test, the trial court, under 404(B), 608(B), and 609.1, should have made a determination as to the admissibility of the evidence. Under 608(B), this evidence would be inadmissible for the purposes of attacking Clark's credibility, as particular acts may not be used for the purposes of attacking truthfulness.
Furthermore, under 404(B), "Evidence of other crimes which do not constitute part of the res gestae are inadmissible unless offered to prove system, knowledge, motive, or intent." State v. Lee, 569 So.2d 1038, 1041 (La.App. 3 Cir.1990). Article 404(B) provides that evidence of other crimes may not be used to show that the defendant acted in conformity therewith, unless the crime forms part of the res gestae of the charged act. Clearly, the February 16th robbery could not be said to be part of the March 2nd robbery, nor did the State argue as such. Other crimes may be used for other purposes, i.e. to prove motive, intent, opportunity, etc. However, none of the purposes mentioned in the article are satisfied by the State's impeachment of Clark. By their own admission, the State offered the video and testimony solely for the purposes of impeachment.
In State v. Brewington, 601 So.2d 656, 657 (La.1992), the Supreme Court stated:
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it.
(citing State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976)). This is not the situation in the case at bar. The state was using the other crimes evidence to impeach the defendant. This is clearly prohibited by Supreme Court holdings and the Louisiana Rules of Evidence.
In addition, under 609.1, only offenses for which the defendant has been convicted can be used for impeachment. Not only was Clark never convicted of the February 16th robbery, he was never charged or arrested. The evidence is inadmissible under any of these three articles. If the State introduced the tape and testimony for anything other than impeachment, it would have first had to satisfy the requirements of State v. Prieur, 277 So.2d 126 (La.1973).
Finally, regarding the 403 analysis, the videotape clearly showed Clark committing a different robbery. Although the jury was instructed by the trial court to view the tape only regarding the issue of the shotgun, the jury would not have been able to ignore Clark's identity. Regardless of whether the jury believed he committed the crime on March 2nd, they would have convicted Clark based on the fact that they saw him commit another robbery. In State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99, the Louisiana Supreme Court stated:
Evidence of other crimes is generally inadmissible in the guilt phase of a criminal trial ... This general rule ensures that a defendant who has committed other crimes will not be convicted of a present offense simply because he is perceived as a "bad person," irrespective of the evidence of his guilt or innocence. A conviction should be based on guilt and not on character.
Furthermore, in Lee, supra, 569 So.2d at 1042, this Court stated:

*477 Even if relevant, because the evidence of other offenses is so strongly prejudicial, the greatest care ought to be taken to reject such evidence unless it is plainly necessary to prove something which is really at issue.
(citing State v. Moore, 278 So.2d 781 (La. 1972)).
Pursuant to the Louisiana Code of Evidence and case law, both the videotape and Perez' testimony regarding the February 16th burglary were unnecessary and are inadmissible. Only prior inconsistent statements and prior convictions can be used to impeach the defendant in a criminal case. The trial judge could have easily limited the testimony, and allowed for the impeachment testimony to go before the jury, without admitting evidence of the February 16th robbery. For example, the trial judge could have instructed the State and its witness, Mr. Perez, to indicate that two weeks prior to the robbery in question, Perez saw Clark with a similar gun at a different location. That would have been sufficient to impeach Clark, without allowing the specifics of the prior burglary to be brought out.
I would vote to vacate the sentence and remand for a new trial.